Dr. David Gordon Petty *et al. v.* Dr. Lillard Sloan *et al.*

*(Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

Hugh Hailey, of Carthage, and Charles L. Cornelius, of Nashville, for appellants.

H. B. McGinness, of Carthage, and Albert Williams, of Nashville, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This suit involves the proper construction of a paragraph in a lease contract. The suit was filed by the appellants under the Declaratory Judgment Act, Williams' Code, Section 8835 et seq. The Chancellor in an able opinion construed the Act against the appellants. They have seasonably perfected their appeal. The suit below was heard on bill and answer. The briefs and arguments in this case, from the standpoint of a judge or a lawyer, could be considered as beautiful, as they present an ideal work of able craftsmen on both sides. We have spent several days in reading these briefs, the authorities cited and in considering the matter and have now, in our minds, reached a determination which will hereinafter be set forth.

The contract sought to be construed was by Smith County, Tennessee, acting through its "hospital committee" and the appellees.

The contract between these parties is attached to the original bill and made an exhibit thereto. This contract shows that Smith County constructed this hospital building at Carthage, Tennessee, from the proceeds of a $290,000 bond issue which was issued by the Quarterly County Court pursuant to legislative authority.

The controversy between the parties arises over the construction of Paragraph XI of the lease contract, which is as follows:

"Lessees agree to cooperate with all reputable doctors and especially the doctors of Smith County in the operation of said hospital and to make available the facilities of said hospital for the *treatment of their patients.*" (Italics ours.)

The answer of the appellees contends that the meaning of this clause was:

" 'Lessees agree * * * to make available the facilities of said hospital for the treatment of their patients' (i.e., patients of other doctors), was by the contracting parties intended as excluding, not including, surgical operations, and was by them employed to effectuate such intent, and that it does fairly import and manifest and express such meaning, intent and purpose.''

Thus we have the issue. Obviously it is that the appellees take the position in their answer and so allege that in the use of the word ''treatment'' it was their intent that this word was to be used in a restricted sense and that it was not to include surgical operations. The Chancellor apparently, in his excellent memorandum, accepted their theory and position. He thought that since the appellees in answering the bill had set out certain facts as to what their intention was in the use of the language in the contract and that since the suit was set down by the plaintiff on bill and answer that then this was an admittance of these facts of intention of the meaning of the word ''treatment'' and that he was thereby bound by such facts. The Chancellor said:

''The facts are established by the order setting the case for hearing on bill and answer. These averments taken as true admit or stipulate in effect that the contracting parties (not the defendants only) employed the language 'treatment of their patients' as meaning treatment other than surgery, 'treatment' being used in a restricted sense. Their mutual understanding or construction of the words used is in effect established by the record, and binding on the Court, granting that the word 'treatment' in its

general sense would include surgery. It is my opinion that this is determinative of the controversy.''

The original bill filed in this cause sets forth the fact that the Quarterly County Court issued bonds and built this hospital; appointed a hospital committee with power to negotiate a lease and that this committee on June 25, 1952 had entered into the contract with the appellee doctors which is made an exhibit to the bill. The bill then quotes the Paragraph XI above quoted and in effect says that even though this contract is that these lessees would let any reputable doctors and especially the doctors of Smith County bring their patients to this hospital for treatment that the appellees had refused to allow the appellants to bring patients there for any surgery necessary for the treatment of their patients unless the doctors so desiring surgery for their patients would either employ the services of the appellees or those that the appellees suggested and allowed to practice surgery in this hospital.

The bill averred that this action on the part of the appellees was a direct violation of the clause of the lease contract above quoted (XI) and that it also amounted to a violation of the ethics of the medical profession, since it deprived the patient of the right of freedom of choice of his physician and surgeon.

Other things were averred that will be hereinafter referred to as necessity demands and an injunction was prayed. As heretofore said this was denied and the clause in the contract under consideration was construed as the appellees—lessees under the lease contract—had construed it in their answer.

The joint answer of the appellees (defendants below) in effect admitted all of the averments of the bill except as to what they claimed was their intention in the use of the words in Paragraph XI above quoted which as we

quoted above was to the effect that it was their intention that this word "treatment" be used in a restricted sense and did not include surgery.

■■ The appellants (complainants below) are third party beneficiaries for whose use and benefit Section XI above quoted of the lease contract was made and entered into. The rights of these third party beneficiaries are affected with all the infirmities of the contract as would have been between parties to the contract. *Fulmer* v. *Goldfarb,* 171 Tenn. 218, 101 S. W. (2d) 1108; 12 Am. Jur., p. 842, Section 289. Their rights, too, depend upon "and are measured by", the terms of the contract. Am. Jur., supra.

■■ The first thing that we must do is to determine just what was the effect of setting this case for trial on bill and answer. It has been recognized in this State from the very earliest practice that when "The parties went to trial on bill and answer, and according to a well settled rule of the chancery pleading and practice, 'the answer is to be considered true in all points, and when the defendant states that he believes and hopes to be able to prove such and such matters they are considered as proved:' *Brinkerhoff* v. *Brown,* 7 Johns' Ch. 222. It is not meant by this rule that the legal deductions insisted on in the answer are to be considered as true, but only such matters of fact as are stated in the answer by way of defense, or evidence of the equity set forth in the bill." *Rodgers* v. *Rodgers,* 1871, 53 Tenn. 489, 495. It is otherwise expressed by Judge Gibson in his Suits in Chancery, Section 439: "The rule that the answer is to be construed as true in all its parts does not mean that the legal deductions insisted on in the answer are to be considered as true."

Thus it is readily seen what the contentions of the respective parties herein have been. The appellants of course insist that the contract is plain and unambiguous within itself and is not subject to have outside testimony introduced to vary or change it or set forth what the intention of the parties was under it. It is their contention that the contract does not contain any ambiguity either latent or patent. To the contrary the appellees take the position (and it is this position that was adopted by the Chancellor) that by their stating in their answer what their intention was in using the word "treatment" that this is a statement of fact and since it is a statement of fact it is admitted to be true and therefore must be accepted as true. Of course if their contention is correct the lawsuit must be affirmed.

Able counsel brought the determinative matters to an issue herein via their pleadings so that it was not necessary to take long depositions. If the contract was subject to proof outside of the contract then this could have been done by the introduction of witnesses but by stating in their answer what the contention of these witnesses was, they have stated the facts and thus it is not necessary to introduce any facts. We think that the parties are exactly in the same position as they would have been if the cause had not been set for hearing on bill and answer. Nobody has lost any rights by reason of the way the suit was tried below.

██ ██ It is likewise the contention of the appellants that if a contract is plain and unambiguous it is a question of law and it is the function of the court to interpret the contract as written—according to its plain terms. It was their contention also that the intention of the parties is expressed by the language of the contract when used in an unambiguous instrument and must be given effect

though it was not actually the intention entertained by one or more of the parties to the contract. These contentions are well supported by numerous authorities in this State and elsewhere. See *Home Beneficial Ass'n* v. *White,* 180 Tenn. 585, 588, 177 S. W. (2d) 545; 12 Am. Jur., pp. 745-51, and others. To the contrary the appellees take the position that the prime rule of construction of contracts is to carry out the intention of the parties thereto and that if the contract does not so state the intention that then proof is admissible to show what the intention of these parties was. Thus it is said that the statements made as to what the intention of the parties was in using the word "treatment" herein that this is admissible because at the time the parties made this contract it was their intention to use the word in a restricted sense and that it was not to cover surgical operations. Proof of the intention of the parties to a contract was admitted by this Court in *Hibernia Bank & Trust Co.* v. *Boyd,* 164 Tenn. 376, 377, 382, 48 S. W. (2d) 1084, 1085. This Court there though held that this proof could be admitted because admission of proof in that case came under one of the clear exceptions to the parol evidence rule. See numerous cases there cited supporting this exception. Clearly though this exception is not applicable under the contract in the instant case. That exception was that consideration is not regarded " 'in construing the statute [of frauds], as part of the contract, but merely as inducement to it. And therefore no principle of the law is violated by the admission of parol evidence of the consideration, whenever it becomes necessary to be shown.' " *Hibernia Bank & Trust Co.* v. *Boyd,* supra.

Next let us consider the contract and try to see whether or not there is any ambiguity in it or whether or not just from the face of the contract the intention of the parties

is sufficiently expressed therein where it can be construed according to its plain terms. The contract of lease is for the "Smith County hospital", and of course the adjoining grounds at Carthage, for a term of 10 years at a stipulated amount per month; next it is to be used for a hospital only; next the lessees are to keep the hospital in proper repair and the lessors are to make repairs necessary on account of defective materials or faulty installation, etc.; next the lessor agrees to keep.the building insured and apply the proceeds of the insurance to rebuilding in case of fire or other casualty; next the lessees agree to "furnish all equipment necessary to operate said hospital which is not included in the Architect's specifications, and installed by the Contractor, such as beds, furniture, linens, kitchen and dining room utensils, light bulbs, office equipment, surgical supplies and instruments, operating table, etc."; next no part of it can be subleased nor can material alterations be made to the building without the consent of the lessor; next the lessees agree "to cooperate with all reputable doctors of Smith County in the operation of said hospital and to make available the facilities of said hospital for the treatment of their patients;" and last the provision is made for charity patients. The question for us to answer is: Does the language "to cooperate with all reputable doctors of Smith County in the operation of said hospital and to make available the facilities of said hospital for the treatment of their patients" need outside, extraneous evidence for one to understand what is meant by the use of the words therein used? Is this quoted language ambiguous?

■■■■ Our answer to the question is no. It seems to us that the language is plain, simple and unambiguous and this being true "it is the function of a court to interpret and enforce contracts as they are written, notwith-

640

standing they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves." *Smithart* v. *John Hancock Mutual Life Ins. Co.*, 167 Tenn. 513, 525, 71 S. W. (2d) 1059, 1063.

In reading and studying this contract we of course must construe it with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used. *Southern Pub. Ass'n* v. *Clements Paper Co.*, 139 Tenn. 429, 432, 201 S. W. 745, L. R. A. 1918D, 580. All of this is shown by the averments of the bill and the contract exhibited thereto. This hospital, we must keep in mind, was constructed from the proceeds of a bond issue, issued by the Quarterly County Court of Smith County. It is public money. Of course the County had a perfect right to negotiate with doctors and make a lease with them for the operation of a hospital because this is in the field of a doctor. The contract though does not speak for nor give the lessees (appellees herein) the right to operate the hospital as a private hospital but for the benefit of all doctors in good standing with the medical profession and especially those in Smith County.

We in considering the contract find that it does not contain technical expressions. The contract, it seems to us is expressed in non-technical language and subject to be, and capable of being, read and understood by the citizens and taxpayers of the County. This being true it certainly seems that in construing the meaning of this language that the word "treatment" should be given its ordinary meaning. The Alabama Courts have held that the word "treatment" in common parlance and often in law is a broad term covering all the steps taken to effect a cure of an injury or disease. *Hester* v. *Ford*, 221 Ala. 592, 130 So. 203. This seems a reasonable statement for

one to apply to the term as herein used. In 70 C. J. S., Physicians and Surgeons, Section 1, p. 817, the author says:

"Treatment may, and generally does, include three stages, namely, preliminary, main, and final; and whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term 'treatment' even though it may not be an indispensable prerequisite."

These definitions as have been adopted by the courts are not out of line at all for any one to consider in his mind when seeing the word "treatment" used in the contract as here used. It certainly seems most reasonable to us that if the word was to be given a restricted or limited meaning so as to exclude certain things and include others that then the contract, for it to have such a restricted or limited meaning, should go further and so state in unmistakable terms. When the contract is worded as this one is worded with just the plain term "treatment" therein we feel that the courts are bound to construe the contract as written and apply the meaning of the term "treatment" what would be the ordinary, common accepted meaning of the word such as the definitions above quoted. The New York courts in defining what the word means in insurance contracts have said that it applies to medical or surgical treatment or something equivalent thereto. *Kirschner* v. *Equitable Life Assurance Society of United States,* 157 Misc. 635, 284 N. Y. 506, 510. In other words insofar as we can determine and find these meanings are normal, ordinarily accepted meanings. Any restricted meaning would have to be set forth at the time the contract is entered into, otherwise the contract

would have to be taken as is, subject to the common, ordinary meaning of the word there used. The court must take this as the intention of the parties when the contract was made. If such was not their intention after the contract was drawn and signed they should have then done something else about it. After the contract was entered into the court will not admit evidence dehors the contract to say that the parties meant this or that or intended this or that by the use of certain words of ordinary accepted meaning. Words may be given any meaning the parties desire but when a word is given a meaning other than its ordinary meaning it should be so stated in the contract, otherwise the ordinary meaning of the word will be ascribed to it.

Of course it is a well settled, and practically universally recognized principle, that the cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles. *Thompson* v. *Exchange Bldg. Co.*, 157 Tenn. 275, 8 S. W. (2d) 489, 60 A. L. R. 693; *Laue* v. *Grand Fraternity*, 132 Tenn. 235, 177 S. W. 941, L. R. A. 1915F, 1056, annotated cases 1917A, 376 and others. In getting at this intention we of course do not determine what the state of the mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written. Of course it is a well recognized principle that the ascertainment of such intention is a question of law or a judicial function for us to perform when the language is plain, simple and unambiguous.

This has been an unusually interesting lawsuit. It has been briefed and handled in a manner to make it indeed attractive to a court to work on. After due consideration,

for the reasons herein expressed, we must reverse the decree of the Chancellor. The cause will be remanded to that court for further proceeding consistent with what is herein said.