# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

December 4, 1996

Cecil W. Crowson
Appellate Court Clerk

ELIZABETH ANN BOUTIN,                )
                                     )
        Plaintiff/Appellee,          )
                                     )        Williamson Chancery
                                     )        No. 18606-R2
VS.                                  )
                                     )        Appeal No.
                                     )        01A01-9601-CH-00014
FRANCIS JOHN BOUTIN,                 )
                                     )
        Defendant/Appellant.         )


APPEAL FROM THE CHANCERY COURT FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

For the Plaintiff/Appellee:

Virginia Lee Story
Franklin, Tennessee

For the Defendant/Appellant:

Ewing Sellers
SMITH & SELLERS
Murfreesboro, Tennessee

## AFFIRMED AS MODIFIED
## AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a provision in a marital dissolution agreement requiring the father to prepay his child support. Upon discovering that one of his children had decided not to complete high school, the father stopped paying the agreed amount of child support and filed a petition to terminate his child support obligation on the ground that the prepayment agreement was premised on the children's continued enrollment in high school. The Chancery Court for Williamson County denied the petition, and the father perfected this appeal. We have determined that the trial court correctly enforced the amended marital dissolution agreement and accordingly affirm the judgment as modified herein.

## I.

Elizabeth Ann Boutin and Francis John Boutin were divorced in November 1988 in the Chancery Court for Williamson County. The decree incorporated an August 1988 marital dissolution agreement in which the parties agreed that Ms. Boutin would receive custody of two of their sons,[1] Brian Boutin, then fourteen, and Stephen Boutin, then twelve, and that Mr. Boutin would pay $2,000 per month in child support. The agreement specifically provided for the renegotiation of Mr. Boutin's child support obligation when Brian Boutin became eighteen.

Brian Boutin turned eighteen in May 1992 shortly before completing his junior year in high school. In June 1992 Ms. Boutin petitioned for an increase in child support, and the parties negotiated an amendment to their marital dissolution agreement. In return for Ms. Boutin's agreement not to seek any future child support increases, Mr. Boutin agreed to increase his monthly child support to $2,250 until Brian Boutin's expected graduation from high school in May 1993 and then to reduce it to $1,128 until Stephen Boutin's expected graduation from high school in May 1995.[2] Mr. Boutin also agreed to prepay his entire anticipated

---

[1]The parties had a third child who had already reached the age of majority by the time the marital dissolution agreement was negotiated and signed.

[2]Tenn. Code Ann. § 34-11-102(b) (1996) (formerly codified at Tenn. Code Ann. § 34-1-
(continued...)

child support obligation for both children - $57,950 - on or before July 15, 1993. In addition, the parties agreed that Mr. Boutin's total obligation would be reduced by $25,000 when he conveyed his interest in the marital home to Ms. Boutin. The trial court entered an agreed order in June 1992 directing Mr. Boutin to pay Ms. Boutin the remaining $32,950 by July 15, 1993.

Ms. Boutin and her two sons moved to Florida during the summer of 1992. Stephen enrolled in high school, but Brian did not when he learned that he would be required to attend an extra year of high school in order to graduate. Instead of enrolling in high school, Brian decided to pursue his G.E.D. Mr. Boutin stopped paying child support in January 1993 when he discovered that Brian had not enrolled in high school. By that time, he had transferred his interest in the marital home to Ms. Boutin and had paid $20,250 of his remaining $32,950 obligation.

Mr. Boutin moved to St. Louis after the divorce. In June 1993, Ms. Boutin commenced an URISA action against Mr. Boutin in Missouri to require him to pay his child support arrearage.[3] In response, Mr. Boutin filed a petition in the Chancery Court for Williamson County seeking to hold Ms. Boutin in contempt[4] and requesting a termination of his child support obligation because he had overpaid his obligation following Brian's decision not to complete high school. On August 21, 1995, the trial court filed an order finding that Mr. Boutin owed Ms. Boutin $12,700 in back child support. Accordingly, the trial court awarded Ms. Boutin a judgment for $15,933.33 representing the child support arrearage and pre-judgment interest and $2,050 in attorney's fees.

---

[2](...continued)
101(b)) provides:

> Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first.

[3]The Missouri court has stayed the URISA proceeding pending the outcome of this case.

[4]The contempt matter related to Ms. Boutin's unauthorized use of a joint line of credit at a Nashville furniture store. Mr. Boutin appealed from the decision not to hold Ms. Boutin in contempt, but his lawyer announced during oral argument that he was abandoning this issue.

**II.**

Mr. Boutin's principal assertion on this appeal is that the trial court erred by interpreting the amended marital dissolution agreement to require him to pay the full, lump sum amount of child support obligation even though one of his sons had dropped out of high school. He asserts that he agreed to pay the increased child support on the assumption that his two minor sons would complete high school on schedule. Since the amended agreement does not specifically address the possibility that the boys might drop out of high school, we must determine whether the amount of Mr. Boutin's child support obligation depended as a matter of law on both his sons remaining in high school.

Marital dissolution agreements are essentially contractual in the sense that they are the product of the parties' negotiation and agreement. *See Seeber v. Seeber,* App. No. 03A01-9508-CV-00290, 1996 WL 165092, at *5 (Tenn. Ct. App. Apr. 10, 1996); *Mitchell v. Mitchell,* App. No. 01A01-9206-CV-00244, 1993 WL 33765, at *4 (Tenn. Ct. App. Feb. 10, 1993). Except for legal obligations that remain under the court's control, *see Towner v. Towner,* 858 S.W.2d 888, 890 (Tenn. 1993), these agreements should be construed and enforced using the customary principles of contract law. *Bruce v. Bruce,* 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990) (*quoting Matthews v. Matthews,* 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)).

A parent's obligation to support minor children is one of the legal obligations remaining within the court's control as long as the child is entitled to receive support. Parents must support their non-disabled children until they become eighteen or until their high school class graduates. *See* Tenn. Code Ann. § 34-11-102(b). The Child Support Guidelines promulgated by the Tennessee Department of Human Services govern a parent's minimum support obligation. Any voluntarily assumed obligation in excess of the required minimum is governed exclusively by the parties' agreement. Mr. Boutin's child support obligation following the entry of the amended marital dissolution agreement in June 1992 appears to exceed the guidelines in three material respects. First, the guidelines would not require him to defray the costs of his sons' college

education. Second, the guidelines would not require him to pay as much monthly child support as he agreed to pay.[5] Third, the guidelines would not require him to agree to prepay the entire amount of his expected child support obligation.

The amended marital dissolution agreement contains support obligations that remained in the trial court's control and other obligations controlled by the parties' agreement. Mr. Boutin's prepayment obligation exceeds the legal minimum required by the guidelines and is, therefore, governed by the terms of the marital dissolution agreement.

We must ascertain and give effect to the contracting parties' mutual intention as reflected in their agreement. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn. 1975). To accomplish this task, we must consider the entire contract without favoring either party. *Omaha Property and Cas. Ins. Co. v.* Johnson, 866 S.W.2d 539, 541 (Tenn. Ct. App. 1993). We must also be guided by the written terms of the contract, *Heyer-Jordan & Assocs v. Jordan,* 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990), rather than by the contracting parties' states of mind or uncommunicated intentions. *Petty v. Sloan,* 197 Tenn. 630, 642, 277 S.W.2d 355, 360-61 (1955); *Bill Walker & Assocs. v. Parrish,* 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989).

The fact that the parties calculated Mr. Boutin's anticipated future child support obligation based on Tenn. Code Ann. § 34-11-102(b) does not necessarily mean that the parties agreed that Mr. Boutin's obligation would decrease if either son left high school before graduating. The record contains no indication that the parties ever discussed, let alone agreed, how their amended marital dissolution agreement might be affected if one or both of their sons decided to drop out of high school. Without this evidence, we cannot condition Mr. Boutin's contractual agreement to prepay an agreed upon amount of alimony on both of his sons remaining in high school. Were we to do so, we could be giving effect to Mr.

---

[5]Mr. Boutin's adjusted gross income in 1992 was $73,883. Accordingly, the child support guidelines required him to pay approximately $1,383 in monthly child support. His agreement to pay $2,250 until May 1993 when Brian was expected to graduate from high school was 62% higher than the support required by the guidelines. The amount Mr. Boutin agreed to pay for Stephen's support after May 1993 likewise exceeds the guidelines amount.

Boutin's uncommunicated intentions. Accordingly, we affirm the trial court's conclusion that Mr. Boutin is not excused from his child support obligations under the amended marital dissolution agreement simply because Brian elected not to complete high school.

## III.

Mr. Boutin also insists that the trial court erred by not requiring Ms. Boutin to reimburse him for a payment he was required to make to a furniture store because of unauthorized, post-divorce charges Ms. Boutin made on a charge account with the store. We agree that this was not a marital debt and, therefore, that it was not Mr. Boutin's obligation. Accordingly, we have determined that Mr. Boutin should receive credit for this payment.

The parties agreed in their original marital dissolution agreement that they would not incur any debts after the divorce that could be chargeable to the other party. Despite this agreement, Ms. Boutin purchased approximately $7,500 worth of furniture at a Nashville store using a joint charge account that was still in Mr. Boutin's name. Derogatory information was placed in Mr. Boutin's credit file after Ms. Boutin failed to keep the account current, and this information caused a mortgage company to decline to refinance Mr. Boutin's mortgage until the dispute was resolved. Even though he had not purchased the furniture, Mr. Boutin was required to pay the furniture company $500 to resolve the problem.

The trial court declined to hold Ms. Boutin in contempt for using this account to purchase furniture and declined to give Mr. Boutin credit for the $500 payment to Ms. Boutin's creditor. The debt involved was a non-marital debt incurred by Ms. Boutin after the divorce for her own benefit. Accordingly, Mr. Boutin was not responsible for this debt, and the trial court should have given Mr. Boutin a $500 credit on his child support arrearage to compensate him for the $500 payment he made on Ms. Boutin's behalf.

## IV.

Finally, Mr. Boutin asserts the trial court should have awarded him $3,997.82 to reimburse him for the legal expenses incurred to defend against Ms. Boutin's demand that he honor his child support agreement. He argues that he is entitled to these fees because Ms. Boutin breached the marital dissolution agreement by making unauthorized charges on a joint account that should have been closed after the divorce. This argument confuses two issues that should be kept separate.

The first issue involves the parties' child support dispute. Post-divorce proceedings to collect past-due child support are primarily for the benefit of the child or children in need of support not the custodial parent. *Graham v. Graham,* 140 Tenn. 328, 334-35, 204 S.W. 987, 989 (1918). Accordingly, Tenn. Code Ann. § 36-5-103(c) (1996) provides that a parent using the courts to enforce a child support obligation may recover reasonable attorney's fees from the delinquent spouse. These fees are within the court's discretion. *Sherrod v. Wix,* 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). Mr. Boutin is not entitled to attorney's fees with regard to the child support issue; however the record contains ample basis for the trial court's decision to order Mr. Boutin to pay Ms. Boutin $2,050 for the legal expenses she incurred.

The second issue involves Mr. Boutin's efforts to recover the $500 he paid on Ms. Boutin's behalf. His claim for attorney's fees can only be based on the provision in the marital dissolution agreement authorizing either party to recover the legal expenses incurred as a result of the other party's breach. We have carefully reviewed the billing information submitted by Mr. Boutin's lawyer. While we have no doubt that the time and charges reflected therein are reasonable and appropriate, we are unable to determine what portion of the lawyer's time was spent defending Ms. Boutin's claim for child support arrearages and what portion was spent pursuing Mr. Boutin's claim for the $500 he paid on Ms. Boutin's post-divorce furniture debt. Without this information, and in light of the fact that the primary contested issue between the parties concerned Mr. Boutin's child support obligation, we find that the trial court properly declined to require Ms. Boutin to reimburse Mr. Boutin for any portion of his legal expenses.

# V.

We affirm the trial court's conclusion that Mr. Boutin remains liable for the entire amount of the child support he agreed to pay in the amended marital dissolution agreement. On remand, however, we direct the trial court to give Mr. Boutin a $500 credit on the original judgment in recognition of the payment he was required to make to one of Ms. Boutin's creditors. We also tax the costs of this appeal to Francis John Boutin and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE