BIENVENIDO T. SAMSON, M.D.,   )
                                   )
     Plaintiff/Appellee,       )
                                   )      Appeal No.
                                   )      01-A-01-9609-CH-00430
VS.                           )
                                   )      Trousdale Chancery
                                   )      No. 6243
HARTSVILLE HOSPITAL, INC.,   )
                                   )
     Defendant/Appellant.    )

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

FILED

March 12, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEALED FROM THE CHANCERY COURT OF TROUSDALE COUNTY
AT HARTSVILLE, TENNESSEE

THE HONORABLE C. K. SMITH, CHANCELLOR

EDDIE TAYLOR
DONOHO, TAYLOR & TAYLOR
204 Court Street
P. O. Box 179
Hartsville, Tennessee 37074
     Attorney for Plaintiff/Appellee

LUIS C. BUSTAMANTE
J. FORD LITTLE
WOOLF, MCCLANE BRIGHT, ALLEN & CARPENTER
900 S. Gay Street, Suite 900
P. O. Box 900
Knoxville, Tennessee 37901-0900
     Attorneys for Defendant/Appellant

REVERSED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The appellant hospital has asked this court to review the question of whether Dr. Samson should be required to submit his dispute with the hospital to binding arbitration after the termination of a contract between them. The hospital insisted on arbitration, and the doctor chose to pursue his rights through the courts. The Chancery Court of Trousdale County found that the arbitration clause in the contract was no longer binding on the doctor, and it enjoined the hospital from pursuing arbitration. We reverse.

## I.

On October 8, 1993, Hartsville Hospital and Dr. Bienvenido Samson entered into a one year Physician Agreement, whereby the doctor would establish a practice in Hartsville, and the hospital would provide assistance to him in the form of advancements of up to $15,000 per month. The purpose of the advancements was to enable the doctor to meet his operating expenses, and to guarantee a floor under his income. The agreement also required the doctor to provide the hospital with 60 hours per month of emergency room coverage at no charge.

The agreement contained a provision for repayment of the advancements after the contract came to an end, and also for forgiveness of that obligation on a prorated basis if the doctor continued to maintain a practice in Hartsville. The contract was renewable for one additional year upon the written approval of both parties.

The termination section gave the parties the right to terminate the contract without cause upon 60 days written notice, or to terminate it for cause without

notice, upon certain specified happenings, or upon the "failure of either party to faithfully and diligently carry out the provisions of this agreement." Termination of the agreement by the doctor without cause, or termination by the hospital with cause would result in all the money that had been advanced to the doctor becoming due and payable within 30 days.

Another clause involving termination provided as follows:

In the event that either party notifies the other of intent to terminate the agreement, either party to this agreement may request binding arbitration to resolve any disagreements, with the cost of such arbitration being equally shared.

The parties performed in accordance with the terms of the contract, and continued to perform after October 8, 1994, but neither of them furnished the other with a written notice of intent to renew.

On August 14, 1995 the hospital was sold. On October 2, 1995 the new owners of the hospital sent Dr. Samson a notice of their intent to terminate the agreement with him, and requested reimbursement of the advancements, amounting to $154,614. The doctor rejected the request on the basis that the termination was without cause, and that it thus extinguished his obligation to repay the advancements. Since the parties were unable to resolve their differences, the hospital invoked the arbitration provisions of the contract.

The doctor then filed a complaint in chancery court for a declaratory judgment that he was not obligated to repay the advancements and that he was under no legal obligation to arbitrate the dispute. He also asked the court to enjoin the hospital from proceeding under the arbitration clause, and he demanded to be paid $4,350 for emergency room services rendered under the contract. The hospital responded by filing a motion to stay further court proceedings pending the outcome

of arbitration. After a hearing on the hospital's motion, the trial court dismissed it, and enjoined the hospital from pursuing arbitration. This appeal followed.

## II.

This case is before this court by virtue of Tennessee's Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301 et seq. The provisions of the Act encourage the use of agreements to arbitrate by making it easier to enforce such agreements through the courts.

Tenn. Code Ann. § 29-5-302 reads in pertinent part:

**Agreements to submit to arbitration -- Jurisdiction. --** (a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist as law or in equity for the revocation of any contract . . . .

(b) The making of an agreement described in this section providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder [Acts 1983, ch. 462, §§ 1,17.]

Tenn. Code Ann. § 29-5-303 enables courts to make a summary determination as to whether a party is entitled to arbitration, upon the application of a party who can show the kind of agreement described in Tenn. Code Ann. § 29-5-302 and an opposing party's refusal to arbitrate. The case before us was initially filed by the party who refused to arbitrate, rather than by the one who sought arbitration, but we do not believe that this minor deviation from the procedure described in the statute impairs the hospital's rights under the Uniform Arbitration Act.

The right to appeal an adverse ruling on the question of arbitration is found in Tenn. Code Ann. § 29-5-319:

**Appeal.** -- (a) An appeal may be taken from:

      (1)     An order denying an application to compel arbitration made under § 29-5-303;

      (2)     An order granting an application to stay arbitration made under 29-5-303(b);

      . . .

      (b)     An appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action. [Acts 1983, ch. 462, §19.]

The statute creates a rare exception to the general rule that a party is not entitled to appeal a judgment or order to the Court of Appeals unless that order or judgment is a final one. See Tenn. R. App. P. Rule 3(b).

### III.

There is little doubt that had Hartsville Hospital terminated the contract with Dr. Samson prior to October 8, 1994, then the hospital would have been entitled to arbitration, despite any objection by Dr. Samson. However, the doctor argued at trial, as he argues here, that the parties' failure to execute a written renewal of the contract eliminated all his obligations under that contract, including the obligation to submit disputes to arbitration. In the alternative, he argues that his obligations under the contract were terminated on the date that the hospital was sold, because the sale rendered the signatories unable to perform in accordance with its provisions.

The appellant argues to the contrary that the contract was still in effect after October 8, 1994, because both parties continued to perform under it. To uphold this argument, we would perhaps have to find that the situation is akin to that of a holdover tenant at the conclusion of a one-year lease. The agreement in such a case continues on the same terms as before, except that it is converted to a periodic tenancy or a tenancy at will, which can be terminated by either party upon proper notice.

- 5 -

Appellant also argues that Dr. Samson's complaint contained a binding judicial admission that the contract remained in effect after the first year. The relevant portion of the complaint reads as follows:

> 11. In addition, Dr. Samson performed certain services pursuant to his agreement with the Defendant for which he was entitled to compensation which has never been paid. Specifically, Dr. Samson performed Emergency Room services at Hartsville Hospital in June, July and August, 1995, for which he is entitled to agreed and reasonable compensation in the amount of Four Thousand Three Hundred Fifty and 00.100 Dollars ($4,350.00).

Appellant further contends that arbitration is appropriate in this case because of clear legislative and public policy favoring that mode of dispute resolution. See *Buraczynski v. Eyring,* 919 S.W.2d 314 (Tenn. 1996). Appellant points out that at least one previous decision of this court has called for a liberal construction of arbitration clauses, with all doubts to be resolved in favor of arbitration. See *Dewitt v. Al-Haddad,* Appeal No. 89-394-II (Filed April 25, 1990).

## IV.

The cardinal rule in interpreting any contract is to determine the intention of the parties, and to give effect to that intention, consistent with legal principles. *Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975); *Petty v. Sloan*, 277 S.W.2d 355, 197 Tenn. 630 (1955). In determining the intent of the parties, we must look to the contract as a whole, even though we are here called upon to interpret only one of its clauses. See *Cocke County Board of Highway Commissioners v. Newport Utilities Board*, 690 S.W.2d 231 (Tenn. 1985); *Aetna Casualty and Surety Co. v. Woods,* 565 S.W.2d 861 (Tenn. 1978).

We hesitate to pretermit any argument that either of the parties may advance on remand, by ruling that the contract ended on any particular date. It

appears to us that the notice of termination is not only the triggering event that entitles either party to request arbitration, but it also may affect the outcome of further proceedings, as the obligations of the parties may depend on the reasons advanced for termination.

We must note, however, that the refund the hospital demands is based upon advancements that arose under the contract, and that the clause which provides for binding arbitration to resolve "any disagreement" between the parties must of necessity include disagreements about those advancements. In fact, it appears to us that the parties contemplated that their respective obligations relative to the advancements would be the most likely area for disagreements to arise.

We note also that the contract apparently anticipates that such arbitration may occur after its one year term, and perhaps even several years afterward, in view of the clause that compels the hospital to reduce the doctor's obligation of repayment by $30,000 "for every year that the physician remains in active practice in the service area following the expiration of the term of this agreement."

In view of the clear evidence that the parties intended that disagreements about the repayment of advances be decided by arbitration, and the uncertainties surrounding the legal effects of the hospital's purported termination of the contract on the rights of the parties, we are inclined to reverse the chancellor. Our decision is reinforced by the public policy argument which we discussed in *DeWitt v. Al-Haddad, supra*, as follows:

> ". . . case law across the country indicates that it is a well established principle that arbitration is favored by the state, Federal and common law. This strong public policy favoring the arbitration of disputes is reflected in the Uniform Arbitration Act, which is designed to discourage litigation, permit a resolution of disputes in a specialized forum conversant with the issues involved and provide a speedy resolution of the disputes. Therefore, courts generally

construe arbitration clauses liberally and resolve any doubts in favor of arbitration. . . [C]ourts usually give as broad an interpretation to an arbitration provision as the words and intentions of the parties, drawn from their expressions, will warrant." (*citations omitted*).

**V.**

The decision of the trial court is reversed. Remand this cause to the Chancery Court of Trousdale County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE