IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2001 Session

## AMY JO STONE, ET AL. v. REGIONS BANK

**A Direct Appeal from the Chancery Court for Lincoln County**
**No. 11, 414      The Honorable Charles Lee, Judge, Sitting by Interchange**

---

**No. M2001-00856-COA-R3-CV - Filed February 1, 2002**

---

This is a dispute over life insurance proceeds. Plaintiffs' mother was indebted to defendant-bank and entered into a contract with the bank and the plaintiffs to secure past and future indebtedness by assignment of a life insurance policy on her life. The policy was duly assigned pursuant to the contract with the bank. Subsequently, plaintiffs' mother filed a bankruptcy proceeding, and her liability to the bank on her indebtedness was discharged, but the insurance policy was not affected. The bank continued paying the annual premiums on the policy, and several years after the bankruptcy proceeding, the plaintiffs' mother died. The insurance company, by virtue of the assignment of the policy, paid the insurance proceeds to the bank which then satisfied its indebtedness and paid the balance of the proceeds to the plaintiffs pursuant to the contract. Plaintiffs sue to recover the full amount of the insurance proceeds, contending that there was no existing indebtedness as specified in the contract. The trial court entered judgment for bank, and plaintiffs have appealed. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Robert S. Peters, Winchester, For Appellants, Amy Jo Watson and William Stone

R. Whitney Stevens, Jr., Fayetteville, For Appellee, Regions Bank

### OPINION

Plaintiffs, Amy Jo Stone Watson and William Stone, are the children of Norma Kay Stone, a debtor of Lincoln County Bank, whose successor is the defendant, Regions Bank. To provide additional security for past and future indebtedness to the bank, Ms. Stone entered into a contract with the bank to make a collateral assignment of a life insurance policy, which is the subject of this action. The plaintiffs were made parties to the contract which designates Ms. Stone as the borrower, the bank as the lender, and the plaintiffs as children. The contract assigns a designated policy with

Valley Forge Life Insurance Company to the bank, and pursuant thereto a collateral assignment of the life insurance policy was duly executed by Ms. Stone. The contract further provides, as pertinent to the issue before us, as follows:

3. The Lender shall have the right to liquidate said policy at any time that any indebtedness of the Borrower shall be delinquent for a period of One Hundred Eighty (180) days, after which, at the Lender's option it shall notify the insurance company at the address stated hereinabove, and upon the payment to the Lender of the amount due from the insurance company, the Lender shall use the proceeds therefrom to satisfy any and all past, present or future indebtedness of the Borrower, and, if possible, to clear the indebtedness on the home located as stated, hereinabove.

4. The Lender shall also have the option to demand payment of the insurance company upon the demand of the insured, and Borrower, Norma Kathaleen Stone, and the proceeds therefrom shall be used as stated in "3," next hereinabove.

5. In the event that the Borrower should bankrupt . . . , the Lender shall have the option of demanding payment of the insurance company of any amount due from the policy at that time or to sell the policy, if more could be realized therefrom than from the insurance company.

6. The Borrower shall have the option at any time to sell her home, business, or insurance policy under proper supervision of the Lender for the purpose of liquidating and satisfying her indebtedness to the Lender first, and then, at her option, to use the balance as she may see fit.

7. In any event that the policy of insurance should be liquidated in any manner, it is the intention of the parties that the proceeds therefrom be used to satisfy the indebtedness of the Lender, past, present or future, and if there be sufficient proceeds to satisfy the indebtedness, and, further, should there be any excess, the children of the Borrower shall be entitled to the balance and/or the assets cleared thereby, to be taken by them, share and share alike, provided, however, should the Borrower be living at the time, the balance of the proceeds, and the assets cleared thereby, shall be under the dominion and control of the Borrower to do with as she, in her own judgment, may see fit.

\*          \*          \*

9. The Children - Amy Jo Stone Watson and William Emmett Stone - do hereby enter into this agreement to bind any interest which they presently have or may have in and to the policy of insurance or any of the assets being used as security for the loans contemplated thereby.

Ms. Stone defaulted on the indebtedness, and in 1994 she filed a Chapter 13 bankruptcy petition which was later converted to a Chapter 7 liquidation in 1995. The bank then filed a claim in the amount of $179,072.06 which was designated as secured by the assigned life insurance policy. No objection was made to this claim, and the court made no disposition of the life insurance policy. In the bankruptcy case, Ms. Stone was discharged from her liability on the debt owed to the bank, but the debt was never satisfied. For the years 1995, 1996, 1997 and 1998, the bank paid the premiums on the policy totaling $5,000.00 per year to keep the policy in force. Ms. Stone died on June 2, 1999, and the bank's claim to the insurance company pursuant to the assignment was honored, with the bank receiving the policy proceeds in the amount of $336,930.76. The bank applied $333,982.38 to the existing debt, and remitted the balance of $2,948.38 to the plaintiffs.

Plaintiffs did not accept the amount remitted and contend that Ms. Stone had no indebtedness to the bank at the time of her death, since the debt to the bank had been discharged in bankruptcy. Plaintiffs thereupon filed this action to recover the entire proceeds of the Valley Forge Life Insurance Company policy. Both plaintiffs and defendant filed motions for summary judgment. The trial court denied plaintiffs' motion and granted defendant's motion. Plaintiffs have appealed, and the only issue for review is as stated in plaintiffs' brief:

> Whether, in this case involving the interpretation of a contract entered into among the plaintiffs, their deceased mother, and the defendant bank, which contract provided that the plaintiffs would receive the proceeds of a policy of life insurance on the life of their mother after satisfaction of the indebtedness to the bank, when, at the time of the death of the plaintiffs' mother, the debt to the bank had been discharged in bankruptcy, thereby eliminating the indebtedness, and where the wording of the contract unambiguously asserted the plaintiffs' rights to the insurance proceeds.

Plaintiffs assert that this case is controlled by the interpretation of the contract between and among Ms. Stone, the bank, and the plaintiffs, and that the assignment of the Valley Forge insurance policy is subject to the terms and provisions of the contract providing for the assignment. The facts are not in dispute, and we agree that this case is controlled by the terms of the contract between Ms. Stone and the bank. Interpretation of written contracts involves legal issues, and when the facts are not in dispute, the issues can be resolved by summary judgment. *See Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, 972 S.W.2d 1 (Tenn. Ct. App. 1998).

In *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648 (Tenn. Ct. App. 1999), this Court discussed the rules for the interpretation of contracts:

The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. App. 1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Cas. Co.,* 667 S.W.2d 79 (Tenn. App. 1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville,* 620 S.W.2d 526 (Tenn. App. 1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830, 22 ALR2d 980 (1951).

*Id.* at 652. The primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. *See Mckay v. Louisville & N.R. Co.,* 133 Tenn. 590, 182 S.W. 874, 875 (1916)*.*

In this case, the contract was for the purpose of providing additional security to the bank for a rather substantial sum owed by Ms. Stone to the bank. Plaintiffs assert that because Ms. Stone's indebtedness was discharged in the bankruptcy proceeding, there was no indebtedness to the bank in existence at the time of her death which would precipitate payment of the proceeds to the bank. They state in their brief: "Under the clear wording of that contract, where there had to be an indebtedness to the bank at the time the policy of life insurance was liquidated for the plaintiffs to be deprived of the policy proceeds." In support of this argument, plaintiffs refer to the definition of indebtedness in Black's Law Dictionary 7th Edition: "1. The condition or state of owing money. 2. Something owed; a debt." They assert in their brief that once the indebtedness was discharged in bankruptcy, it ceased to exist. We must respectfully disagree. the debt can exist even though collection is unenforceable.

11 U.S.C.A. § 524 (1993) provides in pertinent part:

**Effect of discharge**

(a) A discharge in a case under this title –

*                    *                    *

-4-

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

*         *         *

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

In *In re Edgeworth*, 993 F.2d 51 (U.S. App.1993), the Court, in construing § 524 of the bankruptcy code, said:

In general, section 524 protects a debtor from any subsequent action by a creditor whose claim has been discharged in a bankruptcy case. To ensure that a discharge will be completely effective, it operates as an injunction against enforcement of a judgment or the commencement or continuation of an action in other courts to collect or recover a debt as a personal liability of the debtor. 3 Collier on Bankruptcy P 524.01, at 524-4 (15th ed.). A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable.

*Id.* at 53.

The primary, and in fact, the only objective of the contract is to provide additional security to the bank for Ms. Stone's indebtedness. The contract provides the bank several options in the use of the insurance policy for this purpose. Paragraph 3 allows the bank to liquidate the policy at its option should the borrower be delinquent for the period of 180 days. In paragraph 4, the bank has the option to demand payment of the cash value of the policy upon demand of the insured. In paragraph 5, the bank has the option to obtain the cash value of the policy should Ms. Stone bankrupt. Under all of these provisions, the bank is not required to do any of the acts referred to but is granted the right to select any or none of the options. As the trial court noted in its opinion: "It is equally obvious that whether and when to liquidate was at the option of the bank."

The bank protected its interest by paying the premiums on the policy of insurance both prior to Ms. Stone's bankruptcy and thereafter until her death. After Ms. Stone went into bankruptcy, the policy remained assigned to the bank as security for the indebtedness, and there is nothing in the record to indicate that Ms. Stone objected to the bank's retention of the assignment and its continuous payment of the premiums. Thus, both Ms. Stone and the bank continued in their

interpretation of the contract that there was an existing indebtedness to the bank after the discharge in bankruptcy. If the definition of indebtedness could be considered an ambiguity in the contract, then the doctrine of practical construction could apply. "It is well settled that the interpretation of a contract by the parties themselves will be adopted by the court." *Fidelity Phenix Fire Ins. Co. of New York v. Jackson*, 181 S.W.2d 625, 631 (Tenn. 1944) (citations omitted).

Accordingly, the order of the trial court granting summary judgment is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, Amy Jo Stone Watson and William Stone, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.