IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 13, 2001 Session

## PEGGY J. LANE, ET AL. v. LUELLA SPRIGGS, ET AL.

**Appeal from the Chancery Court for Cocke County**
**No. 98-113     Telford E. Forgety, Jr., Chancellor**

**FILED OCTOBER 19, 2001**

**No. E2001-00163-COA-R3-CV**

This case involves the validity of an unsigned warranty deed in the plaintiffs' chain of title. Following a bench trial, the court below reformed the deed to add the missing signature. The defendants appeal, arguing, among other things, that the unsigned deed is inoperative and cannot be reformed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Douglas E. Taylor, Sevierville, Tennessee, for the appellants, Luella Spriggs and Alvin C. York.

P. Richard Talley, Dandridge, Tennessee, for the appellees, Peggy J. Lane and husband, Johnny R. Lane.

**OPINION**

I.

The basic facts of this case are not in dispute. The 12-acre tract at issue was originally part of a farm owned by Will York. In 1981, Mr. York had a survey prepared in order to divide the farm into four unequal tracts, and he hired an attorney to prepare four warranty deeds for the purpose of conveying a tract to each of Mr. York's three children – Ethel York Sizemore[1] and the defendants Alvin C. York and Luella Spriggs – and to his granddaughter, Marline York. Included in each deed is a copy of the survey dividing the farm into four tracts; each tract in the survey is labeled with the name of the intended grantee. All of the deeds contain an acknowledgment by a notary public dated January 5, 1982, stating that Mr. York had personally appeared before the notary and had

---

[1]Ms. Sizemore is deceased; her estate was not made a party to this action.

acknowledged that he executed the deeds. Only three of the deeds, however, are actually signed by Mr. York. The deed to Ethel York, while notarized, is not signed.

Mr. York retained the deeds for four years in a wooden box in his bedroom closet. In January, 1986, while hospitalized for an illness, Mr. York asked his daughter Luella to retrieve the deeds and bring them to the hospital. After examining the deeds for approximately thirty minutes, Mr. York asked Luella to take them to the courthouse and have them recorded. He informed her that the purpose of the deeds was to convey the family farm to her, Alvin, Ethel, and Marline.

After the deeds were recorded, they were retained by Luella. At the request of Mr. York, Luella gave Alvin and Marline their respective deeds. Luella kept Ethel's deed, since the latter lived in Ohio. Later, Ethel came to Tennessee, at which time Mr. York took the deed from Luella and delivered it to Ethel. Mr. York died in 1987.[2]

Alvin, Marline, and Luella immediately took possession of their respective properties. While never occupying her 12-acre tract, Ethel paid the property taxes and allowed a nephew to live on the land, although it is unclear from the record when and for how long the nephew lived there. Several family members, including even the defendants, testified that it was "common knowledge" among the family that Ethel owned the 12 acres in question.

On July 18, 1992, Ethel conveyed by warranty deed the 12-acre tract to the plaintiffs, Peggy J. Lane and her husband, Johnny R. Lane. The evidence reflects that the defendants were aware of this transaction. In 1997, however, Luella learned that the deed from Mr. York to Ethel had not been signed by Mr. York. She and Alvin retained an attorney, who contacted the plaintiffs and told them that their ownership of the property was subject to question. Thereafter, the plaintiffs brought this action, seeking a declaration as to their interest in the subject property. In their amended complaint, the plaintiffs asked the court to find that the failure of Mr. York to sign the deed was "an inadvertent clerical error" and requested that the clerical error be cured. They also asserted, as alternative bases for relief, (1) that they had acquired the property by adverse possession and (2) that the defendants were barred by estoppel and laches from questioning the validity of the deed to Ethel. The defendants answered, alleging that the deed purporting to convey the 12-acre tract to Ethel was inoperative and that, therefore, upon the death of Mr. York, the tract passed to his three children by intestacy, with each receiving a one-third interest in the 12 acres. In their amended answer, the defendants also asserted, among other things, that the deed violated the Statute of Frauds.

Following a bench trial, the court below found in favor of the plaintiffs, citing "several reasons." The court found the doctrine of estoppel applicable, and it noted that the plaintiffs had

---

[2]The appellants' brief states that "[n]o one can positively say that Mr. York ever delivered the deed to Ethel York." This is not an accurate statement of the evidence. Luella Spriggs testified that Mr. York delivered the deed to Ethel, although she was not sure whether the delivery occurred at the hospital or later when Mr. York was in a nursing home. Despite her uncertainty as to the site of the delivery, Ms. Spriggs' testimony clearly establishes that delivery did occur.

satisfied the requirements for adverse possession. Ultimately, however, the trial court concluded as follows:

> [Q]uite honestly the Court has found that the evidence is clear, cogent and convincing. I think that this was absolutely without question a mistake pure and simple on the part of Will York; that he absolutely meant to sign that deed and it was a mistake that he didn't, I can't come to any other conclusion. Where he later delivered it and ordered it to be recorded. So I think it's a proper case to order the reformation of the deed and that the deed be reformed to reflect, it will have the effect, the same effect as if it did bear the signature of Will York.

The court rejected the defendants' argument that the deed violated the Statute of Frauds, finding that the contract had been partially performed.

The defendants appeal, arguing that the trial court erred (1) in holding that the deed could be reformed; (2) in finding that the plaintiffs had acquired the property by adverse possession; (3) in holding that the doctrine of estoppel applies; and (4) in holding that the Statute of Frauds is not applicable.

II.

Our review in this non-jury case is governed by Tenn. R. App. P. 13(d). That rule provides that parties on appeal are entitled to a *de novo* examination of the record of the proceedings below; however, that record is burdened with a presumption of correctness as to the trial court's factual findings that must be honored unless the "preponderance of the evidence is otherwise." ***Id.***; ***Union Carbide Corp. v. Huddleston,*** 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are also reviewed *de novo*, but they are not accorded a presumption of correctness. ***Campbell v. Florida Steel Corp.,*** 919 S.W.2d 26, 35 (Tenn. 1996).

III.

Generally speaking, a deed must be signed by the grantor and delivered to the grantee in order to pass title to land and to be valid and binding upon the parties and their heirs. *See* 9 Tenn. Jur. *Deeds* § 9 (1993). While the grantor's signature is generally affixed to the end of the instrument, the Supreme Court has recognized that the signature may be found within the deed itself, at least in a case where the deed was handwritten by the grantor, his name being inserted in the deed "so as to control the entire instrument," and there is evidence that the signature was intended to be final. *See* ***Saunders v. Hackney,*** 78 Tenn. (10 Lea) 194, 202 (1882). In the instant case, however, Mr. York did not sign the deed to his daughter Ethel, and, as the deed was typewritten and prepared by Mr. York's attorney, the signature cannot be "found" within the text of the deed itself as in ***Saunders***. The defendants argue that the deed is invalid for the lack of the grantor's signature and

cannot be reformed; it is the contention of the plaintiffs that the omission of Mr. York's signature was a result of a mutual mistake and that the deed should be reformed to add his signature.

Reformation is an equitable doctrine by which courts may correct a mistake in a writing "so that it fully and accurately reflects the agreement of the parties." 22 Tenn. Jur. *Rescission, Cancellation and Reformation* § 46 (1999). In order to reform a writing on the basis of mistake, there must have been either a mutual mistake or a unilateral mistake induced by fraud. **Williams v. Botts,** 3 S.W.3d 508, 509 (Tenn. Ct. App. 1999), *perm. app. denied* October 4, 1999. "A 'mistake' is an act which would have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition...." *Id.* at 509-10. Reformation is appropriate only where the mistake or fraud is shown by "clear, cogent, convincing evidence." **Dixon v. Manier,** 545 S.W.2d 948, 950 (Tenn. Ct. App. 1976).

The issue of whether a deed may be reformed to supply a mistakenly-omitted signature of the grantor is an issue that has not, according to our research, been addressed by an appellate court in Tennessee. It has been recognized in other jurisdictions, however, that "[w]here both parties to a deed or contract have agreed that the instrument is to be executed, the lack of a party's signature can be supplied by a reformation of the document." 76 C.J.S. *Reformation of Instruments* § 36 (1994); *see also* **Smith v. Royal Automotive Group, Inc.,** 675 So. 2d 144, 153-54 (Fla. Dist. Ct. App. 1996) ("Given that equity regards as done that which ought to be done, there is no compelling reason why a court may not reform a written instrument to reflect the intentions of the parties, including a party's omitted signature.") (citing 76 C.J.S. *Reformation of Instruments* § 36).

We find the Oregon Court of Appeals' decision in **Ames v. Fallert,** 657 P.2d 224 (Or. Ct. App. 1983), to be particularly persuasive in the instant case. In *Ames*, the parties were business partners who had purchased commercial property as tenants in common. The parties decided to merge their interests into one corporation, and a deed was prepared to transfer their individual interest in the commercial property to the new corporation. The parties and their wives met with the bank manager handling their transaction. At this meeting, the deed was signed by the defendant, his wife, and the wife of the plaintiff; however, the plaintiff did not sign the deed. The deed was notarized and the bank manager certified that the four grantors, including the plaintiff, had executed the deed and acknowledged to him that they had voluntarily done so. The deed was later recorded. For the next 12 years, the parties acted consistently with the conveyance of the property to the corporation; for example, the corporation paid all of the taxes and the value of the property was included in determining the value of the corporation's stock.

When the plaintiff discovered that he had not signed the deed, he brought suit seeking a declaration that he had a one-half interest in the property. At trial, the plaintiff testified that he did not intend to convey his interest in the property to the corporation. The trial court, however, found that there was "overwhelming evidence" of the plaintiff's intention to sign the deed and convey the property. The Oregon Court of Appeals agreed, holding that it was "clear" that both parties intended to convey their interests to the corporation. *Id.* at 227. In so holding, the Court noted that the

plaintiff's wife had signed the deed for the sole purpose of clearing the title of her interest, which she had only by virtue of her husband's ownership of the property; from this fact, the Court concluded that her signature was consistent with an intent on the part of the plaintiff to sign the deed. *Id.* Furthermore, the Court noted that the bank officer who notarized the deed obviously thought that the plaintiff had signed it, and the Court inferred from this that the plaintiff had not revealed any intention at the meeting not to sign the deed. *Id.* Finally, the Court relied upon the fact that the parties had acted for 12 years as if their individual interests in the property had been conveyed to the corporation. *Id.* Based upon these facts, the Court concluded that the parties had intended to convey their interest to the corporation and that the plaintiff's failure to sign the deed was a result of a mutual mistake. *Id.* The Court thus held that the deed could be reformed to add the signature of the plaintiff. *Id.*

As in *Ames*, there is overwhelming evidence in the instant case to support a finding that Mr. York intended to sign the deed and convey the 12-acre tract to Ethel. Mr. York instructed his attorney to prepare four deeds to convey the four tracts, which together made up his farm, to his three children and a granddaughter. The survey incorporated into the deeds indicates the four tracts, which are labeled with the names of the intended grantees, including Ethel. While Mr. York signed only three of the deeds, all four deeds were signed, on the same day, by a notary public. The notarization on each deed states that Mr. York appeared before the notary public and acknowledged that he executed the deed. Mr. York retained all four deeds in a wooden box, which, according to his children, was where he kept his important papers. Four years later, he told his daughter Luella that he was conveying the tracts to her, Alvin, Ethel, and Marline, and he asked her to record all four deeds. Clearly, Mr. York's conduct is consistent with an intention to convey these tracts to his children and granddaughter. We also find it significant that following the conveyance, Mr. York's children acted consistently with their father's division of the farm among them, and that no one objected to Ethel's conveyance of the 12-acre tract to the plaintiffs. Under the particular facts of this case, we find the evidence clear, cogent, and convincing that Mr. York intended to convey the subject property to Ethel *and* that he carried that intention into effect by having the deed recorded and delivered to his daughter. His failure to sign the deed was the result of a mutual mistake. We therefore hold that the deed may be reformed to add the signature of Mr. York. The trial court is affirmed as to this issue.

IV.

The defendants argue that the unsigned deed cannot be given effect because it falls within the Statute of Frauds, T.C.A. § 29-2-101(a) (2000), which provides, in pertinent part, as follows:

> No action shall be brought...[u]pon any contract for the sale of land, tenements, or hereditament...unless the promise or agreement, upon which action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

We disagree. As we have held that the deed should be reformed to add the missing signature of the grantor, we conclude that the deed does not run afoul of the Statute of Frauds.

Having held that the trial court correctly reformed the deed to supply the missing signature of the grantor, we need not reach the issues of estoppel and adverse possession raised by the parties.

V.

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellants, Luella Spriggs and Alvin C. York.

_____
CHARLES D. SUSANO, JR., JUDGE