# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 16, 2016 Session

## MICHAEL SIPES, ET AL. v. TERRY SIPES, ET AL.

**Appeal from the Chancery Court for Dyer County**
**No. 13CV421          Tony Childress, Chancellor**

_____

**No. W2015-01329-COA-R3-CV – Filed January 31, 2017**

_____

This appeal concerns a dispute between a father and his adult son over the transfer of real property. In 1997, the father constructed a house on a portion of his two-acre tract of land for his son. Several years later, the son agreed to purchase the house. Subsequently, a disagreement led the parties to discover identical errors in the legal descriptions in the warranty deed executed by the father transferring the property to the son and the deed of trust securing the son's purchase money loan. The trial court, upon its finding of mutual mistake, reformed the incorrect legal descriptions in the deeds, but the court also granted the father a right to use a shed and garden on the son's land. We affirm the trial court's reformation of the legal descriptions in the deeds. However, because we conclude that the evidence is less than clear and convincing that the parties intended the deeds to include the father's right of use, we reverse the trial court's decision to grant the interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part.**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

John W. Palmer and Julie W. Palmer, Dyersburg, Tennessee, for the appellant, Michael Sipes.

Edmund S. Sauer, and Bridget Brodbeck Parkes, Nashville, Tennessee for the appellee, Ocwen Loan Servicing, LLC.

No brief filed on behalf of the appellee, Terry Sipes.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Terry Sipes[1] ("Father") owned a two-acre parcel of real property in Dyersburg, Tennessee. Although originally a single tax parcel, the property was eventually subdivided into three tax parcels: parcel 25, parcel 25.01, and parcel 25.02.

Father constructed his own house on parcel 25.02, known as 579 Highway 210, in the property's northeastern corner. On parcel 25, the largest of the three tax parcels, Father built a storage shed and established a sizable "garden spot" where he grew potatoes and onions. The shed—occasionally referred to by the parties as a barn or "shop"—had electrical service, and Father used it to perform maintenance work on his tractor and lawnmowers and to store hunting decoys.

In 1997, Father took out a loan to build a house on a portion of parcel 25 for his son, Michael Sipes ("Son"). The construction loan was secured by a deed of trust executed by Father in favor of Union Planters Bank. Notably, the deed of trust described the entirety of tax parcel 25 as security for the loan. Specifically, the deed included the following property description:

> BEGINNING at a point in the centerline of Peach Street and Circle Drive; runs thence North 28 degrees 48' east to a set iron pin in the east line of Peach Street right-of-way; runs thence South 51 degrees 54" east 149.98 feet to a set iron pin; runs thence North 38 degrees 05' 203.34 feet to a set iron pin; runs thence East 90' more or less to a point in the original east line of the Terry C. Sipes lot, E.R. Hendrix west line; runs thence Southerly along said east line approximately 250 feet to a point the southeast corner of this lot; thence west along the south line of the Terry C. Sipes original lot to the point of beginning.

---

[1] After this appeal had been fully briefed and argued, Father passed away. On November 30, 2016, Appellee Ocwen Loan Servicing, LLC filed a motion with this Court requesting the substitution of Gary Sipes and Sheila Yants, both of whom were alleged to be in the subject property's chain of title, under Rule 19(a) of the Tennessee Rules of Appellate Procedure.

We granted the motion on January 5, 2017. However, after further review, we determined that the motion was improvidently granted. Ordinarily, when a party dies in the pendency of appeal, the deceased's personal representative is the proper party for substitution. *See* Fed. R. App. P. 43(a)(1) ("If a party dies after a notice of appeal has been filed or while a proceeding is pending in the court of appeals, the decedent's personal representative may be substituted as a party."). Accordingly, we set aside the order granting the motion.

The deed of trust was recorded on January 14, 2003, with the Dyer County Register of Deeds.

Together, Father and Son built the house on the property's southeastern corner, with the address of 180 Circle Drive. Upon its completion, the house stood approximately 15 feet to the shed's east edge and several feet south of the garden spot. For a period of time, Father made payments on the construction loan and allowed Son to live in the newly constructed house.

In early 2005, Father notified Son that he could no longer afford to service the loan on the house. As a result, on March 9, 2005, Father and Son executed a contract to sell the "180 Circle Drive" property. Father executed a warranty deed to Son, which was recorded on April 20, 2005. The warranty deed included the following legal description:

> BEGINNING at a stake, the southwest corner of the two acre tract, more or less, conveyed unto Terry Sipes by deed recorded in Deed Book 259, page 524-5 of the records of the Register's Office for Dyer County, Tennessee; runs thence east 150 feet to a stake; runs thence due north to a point in the original west line of the two said acre tract; runs thence southwesterly along said original west line to the point of beginning and containing approximately one acre more or less.

Also in April 2005, Son obtained a purchase money loan from EquiFirst Corporation, secured by a new deed of trust on the "180 Circle Drive" property, which was subsequently recorded. The new deed of trust contained the same legal description used in the warranty deed. A portion of the loan proceeds was used to obtain a release of the original deed of trust.

After the sale, Father and Son resumed their shared use of the garden spot and shed as had been their practice for many years. Father continued to tend to the garden and store personal items in the shed. Additionally, Father continued to pay the small monthly bill for the electrical service to the shed.

Though its origins are unclear, a dispute arose between Father and Son in the years following the sale of the house. The parties disagreed over the terms of their informal arrangement regarding the shed and the garden spot. Among other things, Father accused Son of changing the locks on the shed, and Son accused Father of doing the same. This led Father to file a detainer warrant in November 2012 to evict Son from the subject property; however, the action was later dismissed.

Due to the dispute, the parties discovered that both the warranty deed and the second deed of trust contained an erroneous legal description of the real property. Each

3

actually described a small, unimproved portion of parcel 25. Most significantly, the description did not include Son's house.

On October 17, 2013, Son and his wife filed a complaint in the Chancery Court of Dyer County, Tennessee, seeking reformation of the deed. By this time, Ocwen Loan Servicing, LLC ("Ocwen") had become the servicer on Son's loan. Accordingly, the complaint was amended to include Ocwen as a defendant.

A one-day bench trial was conducted on March 10, 2015. At trial, both Father and Son agreed that the legal description in the deed was a mistake; however, the parties disagreed on how much land was intended to be conveyed in March 2005. Both Son and Ocwen argued that it was the parties' intent for the entirety of parcel 25 to be conveyed to Son, including the house, the storage shed, and the garden spot. In support of his position, Son testified, and Father did not dispute, that he has been paying the property taxes on parcel 25 since 2005.

Son also called Micky McClure, a land surveyor, to testify concerning the erroneous property description. Mr. McClure confirmed that the warranty deed executed by Father actually described a small, triangular portion of tax parcel 25, measuring approximately a quarter of an acre. He also confirmed that there were no improvements on the portion of land described. Finally, Mr. McClure testified that, in his opinion, "using a common sense approach and looking at the amount of money that was stated on the contract . . . [the legal description was] supposed to encompass parcel 25."

Conversely, Father contended that he merely intended to deed Son the house and a "standard size lot" surrounding it. Father conceded that he intended to transfer the house that he had previously constructed for Son. However, he repeatedly testified that it was never his intention to convey the shed or the garden spot.

Following the trial, the court issued findings of fact and conclusions of law, which were incorporated into the judgment entered on April 29, 2015. The court determined the parties were attempting to convey the house located at 180 Circle Drive, including the entirety of parcel 25, which consists of approximately one acre of land surrounding the house. The court reasoned that Father "was looking to get out from under the loan" secured by the original deed of trust. Accordingly, the court reformed the warranty deed and Ocwen's deed of trust to include the legal description from the Union Planters Bank deed of trust that secured Father's construction loan.

Neither the warranty deed nor the contract of sale mentioned Father's use of the storage building or the garden spot after the conveyance. But, because the court determined the parties intended at the time of the March 2005 conveyance for Father to

4

continue to use the storage building and garden spot, it also ordered the deed reformed to include Father's right of use.[2]

Subsequently, Father moved for a new trial, and Son moved to alter or amend the judgment, or in the alternative, for a new trial. The trial court denied both motions on June 15, 2015. Son filed a notice of appeal.

## II. ANALYSIS

In non-jury cases, the trial court's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law de novo, with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

On appeal, Son and Ocwen do not contest the trial court's reformation of the legal descriptions in the warranty deed and deed of trust to include the property description from the deed of trust securing Father's construction loan, which described the entirety of parcel 25. However, they argue that the court erred in granting Father an undefined property interest in the storage building and garden spot.

"Reformation is an equitable doctrine by which courts may correct a mistake in a writing 'so that it fully and accurately reflects the agreement of the parties.'" *Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. App. 2001) (quoting 22 Tenn. Jur. *Rescission, Cancellation and Reformation* § 46 (1999)). This Court has previously explained:

> A court of chancery in Tennessee has the power to reform and correct errors in deeds produced by fraud or mistake. To be the subject of reformation, a mistake in a deed must have been mutual or there must have been a unilateral mistake coupled with fraud by the other party, such that the deed does not embody the actual intention of the parties.

*Wallace v. Chase*, No. W1999-01987-COA-R3-CV, 2001 WL 394872, at *3 (Tenn. Ct. App. Apr. 17, 2001) (internal citations omitted). Indeed, we have described this principle

---

[2] Additionally, the court dismissed the reformation claim of Son's wife, Samantha Sipes. She and Son were not married when the deed was recorded, and therefore, she did not convince the court that she had any legal interest in the disputed property. The court also denied Ocwen's alternative request for relief, that an easement be granted across any portion of the property wherein the septic field line servicing Son's home may lie that is found to be Father's property. The parties have not appealed either of these rulings.

as "well settled law in this state." *Bank of Am., Nat'l Ass'n v. Meyer*, No. M2014-01123-COA-R3-CV, 2015 WL 1275394, at *3 (Tenn. Ct. App. Mar. 17, 2015).

Still, we have also held that reformation on the basis of mistake is only appropriate where the intent of both parties is clear and is the same. *Hunt v. Twisdale*, No. M2006-01870-COA-R3-CV, 2007 WL 2827051, at *8 (Tenn. Ct. App. Sept. 28, 2007). And, mistake must be shown by "clear, cogent, convincing evidence." *Lane*, 71 S.W.3d 289-90 (quoting *Dixon v. Manier*, 545 S.W.2d 948, 950 (Tenn. Ct. App. 1976)); *see also Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) ("Because the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence. Instead, the evidence of mistake must be clear and convincing.").

Here, there is no dispute that the subject deeds—the warranty deed and second deed of trust—contained the same drafting error. The property description included in both documents describes a small, unimproved portion of tax parcel 25, but both Father and Son agreed that the description did not reflect their true intent. The parties, at a minimum, agreed that they intended for the description to encompass the house constructed for Son in 1997. So, by Father's own admission, the mistake was mutual, and therefore, the trial court's finding of mutual mistake was justified.

Additionally, the evidence in the record sufficiently supports the trial court's reformation of the deed of trust and warranty deed to include the entirety of tax parcel 25 in the property descriptions. The trial court found, and we agree, that Father's purpose in selling the property at issue was "to get out from under the loan" secured by the original deed of trust with Union Planters. Father admitted as much at trial. So, despite Father's testimony that he merely intended to convey the house and small yard surrounding it, the construction loan from which he sought release was secured by the full amount of the approximately one acre that is tax parcel 25. Therefore, we agree with the trial court's finding, by clear and convincing evidence, that Father intended to sell and Son intended to purchase tax parcel 25, the same land Father used to secure his construction loan.

In contrast, the evidence is less than clear and convincing that the parties intended the deeds to include a right of use or some other non-possessory property interest in favor of Father. As discussed above, the trial court, in reforming the mentioned property descriptions, carved out an interest for Father: a "right to use the garden spot and barn." The court failed to fully describe the nature of the interest being granted to Father, and based on this limited description, we cannot determine if the interest runs with the land.[3]

---

[3] Though undefined, the trial court presumably intended to create an easement allowing Father to use the garden spot and shed. *See Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) ("An easement is a right an owner has to some lawful use of the real property of another."). But, as this Court explained in *Pevear*, easements can take two forms.

But regardless of the type of interest, the trial court's decision to grant it was not justified because there is no evidence in the record that the parties mistakenly excluded such an interest, and in fact, neither party requested such relief from the court.[4] *See Heaton v. Heaton*, No. E2013-01985-COA-R3-CV, 2014 WL 4267461, at *7-8 (Tenn. Ct. App. Aug. 29, 2014) (concluding that wife failed to show the existence of a mistake warranting reformation of the subject deed where "there was no allegation or evidence of fraud or mutual mistake" at trial).

At best, the record reflects an informal arrangement between Father and Son, whereby they continued to share use of the garden and shed, as family members sometimes do. Thus, we agree with the trial court's finding that the parties intended Father's use of the shed and garden spot to continue after the sale, but only with Son's permission.[5] Ocwen and Son argue, and we agree, that Son's decision to allow Father's access did not justify the trial court's clouding of the property's title with such an interest.

## III. CONCLUSION

In light of the foregoing, we reverse the trial court's decision to reform the warranty deed and the deed of trust to include a right to use the shed and garden spot. We affirm the trial court's reformation of the legal descriptions of the subject property in the deeds to include the entirety of tax parcel 25, containing Son's house, the shed and

---

> Easements can be divided into two broad classes, easements appurtenant, and easements in gross. In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel.

*Id.* at 116. Here, it is not clear from the trial court's order whether the interest granted was intended to benefit Father personally or Father's land as the dominant tenement.

[4] Further, there are no admissions or even allegations that such was intended. Son took the position that the parties agreed for the garden and shed to be included in the transfer. Conversely, Father claimed that both parties intended for these portions of the land to remain in Father's possession. Neither presented evidence of an intent to transfer the entirety of parcel 25 with a reservation of a non-possessory interest.

[5] The legal term for such an agreement is a revocable license. *See Collins v. Fugate*, No. E2008-01672-COA-R3-CV, 2009 WL 2341549, at *6 (Tenn. Ct. App. July 30, 2009) ("A 'license,' with respect to real estate, is an authority to do a particular act or series of acts on another's land without possessing any estate therein. It is not assignable, and is generally revocable at the will of the licensor.") (quoting *Barksdale v. Marcum*, 7 Tenn. App. 697, 708 (Tenn. Ct. App. 1928)). And, "a license generally does not create an interest in land." *Lee Highway & Assocs., L.P. v. Pryor Bacon Co.*, No. 03A01-9507-CV-00237, 1995 WL 619941, at *3 (Tenn. Ct. App. Oct. 19, 1995).

the garden spot.  This matter is remanded for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE