IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 19, 2021 Session

## CYNTHIA LAWRENCE v. THOMAS LAWRENCE

**Appeal from the Circuit Court for Shelby County**
**No. CT-002895-17  Mary L. Wagner, Judge**

_____

### No. W2020-00979-COA-R3-CV

_____

In this post-divorce case, the trial court granted Appellee/Wife's petition to modify paragraph 4(A)(d) of the parties' Marital Dissolution Agreement ("MDA") on its finding of mutual mistake. The trial court declined to: (1) reform paragraph 4(A)(e) of the MDA; (2) find Appellant/Husband in contempt of the MDA for failure to reimburse Wife for certain college expenses of the parties' son; (3) hold Husband in contempt for his alleged failure to satisfy his support obligations; and (4) award Wife her attorney's fees under the MDA. Because there was no mutual mistake, we reverse the trial court's reformation of paragraph 4(A)(d) of the MDA. The trial court's orders are otherwise affirmed, and Wife's motion for appellate attorney's fees is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

S. Denise McCrary and William L. Bomer, Memphis, Tennessee, for the appellant, Thomas Humphrey Lawrence.

Mitchell D. Moskovitz and Aubrey L. Brown, Jr., Memphis, Tennessee, for the appellee, Cynthia Lawrence.

## OPINION

### I. Background

Appellant/Husband Thomas Humphrey Lawrence and Appellee/Wife Cynthia Lawrence were married on August 19, 1989. The parties have four children; at the time of

divorce, the children were 20, 18, 14, and 12 years old respectively. On July 7, 2017, Wife filed a petition for divorce in the Circuit Court for Shelby County ("trial court"). On July 12, 2018, the parties participated in successful mediation. Prior to the mediation, Husband made a written settlement offer in a letter dated July 3, 2018. On July 9, 2018, Husband sent Wife's counsel another letter advising of an error in the July 3, 2018 letter regarding the amount of Husband's withdrawals from his 401(k). This letter advised and provided proof that the actual amount of the withdrawals was $298,588.64, not the $250,000.00 referenced in the July 3, 2018 letter. The mediator used this letter as a basis to arrive at a "Mediated Agreement," making notations on the letter to reflect the parties' evolving agreements, *see infra*. The parties signed off on the letter with the mediator's notations as the "Mediated Agreement." From the "Mediated Agreement," the parties prepared a MDA. The MDA was reviewed and approved by counsel for both parties and executed and filed with the trial court on July 17, 2018. On July 18, 2018 the parties were divorced. The MDA was incorporation into the Final Decree of Divorce.

Post-divorce, several issues arose. As is relevant to this appeal, on March 22, 2019, Wife filed an Amended Petition to "Correct Clerical Mistake and to Construe Marital Dissolution Agreement Regarding Former Wife's Interest in Former Husband's 401(K) Account . . . and Former Wife's Petition for Scire Facias for Citation for Civil Contempt and for Specific Performance and Money Judgment for Breach of Contract," wherein she alleged, among other things, that there were "clerical mistakes" in paragraph 4 of the MDA regarding the division of marital property. On April 1, 2019, Husband filed a response to Wife's Petition, which was heard on January 16, 2020. A number of stipulated exhibits were admitted into evidence including the parties' "Mediated Agreement." On February 5, 2020, the trial court entered an Order on Wife's Amended Petition. As is relevant to this appeal, the trial court: (1) reformed paragraph 4(A)(d) of the parties' MDA on its finding of mutual mistake; (2) declined to reform paragraph 4(A)(e) of the MDA; (3) entered judgment for Wife in the amount of $1,631.88 for Husband's alimony arrears; (4) declined to find Husband in contempt for failure to pay certain college expenses for the parties' child; (5) awarded Wife attorney's fees under the MDA, but reserved ruling on the amount of same.

On March 4, 2020, Husband filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the Judgment entered on February 5, 2020; Wife opposed the motion. On May 21, 2020, the trial court held a hearing on Husband's Motion. The trial court noted that its prior order of February 5, 2020 was interlocutory and subject to modification at any time before it became final and elected, in its discretion, to address each of Husband's contentions and to more fully explain its findings. The trial court's order from the May 21, 2020 hearing was entered on June 23, 2020. Therein, the trial court: (1) declined to alter or amend its order of February 5, 2020 with regard to reformation of paragraph 4(A)(d) of the MDA; (2) amended its February 5, 2020 order to deny Wife judgment for Husband's alimony arrears; (3) otherwise affirmed its February 5, 2020 order; and (4) denied the parties' requests for attorney's fees under the MDA. Husband appeals.

## II. Issues

Husband raises several issues in his appellate brief. After reviewing Husband's arguments, however, it is clear that the gravamen of his issues involves the trial court's reformation of paragraph 4(A)(d) of the parties' MDA. Accordingly, we restate the issue as: Whether the trial court erred in reforming paragraph 4(A)(d) of the parties' MDA on the ground of mutual mistake.

In the posture of Appellee, Wife raises the following additional issues for review:

1. Did the trial court err by refusing to correct the clerical, mathematical mistake in Paragraph 4(A)(e) of the parties' Marital Dissolution Agreement?
2. Did the trial court err by refusing to require Husband to pay for the cash equivalent of a dorm room and meal plan as required by Paragraph 8 of the parties' Marital Dissolution Agreement?
3. Did the trial court err by allowing Husband to offset obligations required by the Marital Dissolution Agreement and Permanent Parenting Plan with payments made pursuant to a Consent Order on Temporary Support?
4. Should Husband be required to pay Wife's attorney fees and suit expenses from the trial court and on appeal?

## III. Standard of Review

The parties' respective issues involve only the trial court's interpretation and enforcement of their MDA. In Tennessee, MDAs are treated as contracts and are subject to the rules governing construction of contracts. *See **Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006); ***Honeycutt v. Honeycutt***, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). In ***Pitt v. Tyree Organization Ltd.***, 90 S.W. 3d 244 (Tenn. Ct. App. 2002), this Court explained that

> [t]he cardinal rule in the construction of contracts is to ascertain the intent of the parties. ***Bradson Mercantile, Inc. v. Crabtree***, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) (citing ***West v. Laminite Plastics Mfg. Co.***, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. ***Id.*** (citing ***Petty v. Sloan***, 197 Tenn. 630, 277 S.W.2d 355 (Tenn. 1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Id***. (citing ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Id***. (citing ***Ballard v. North American Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. Ct. App. 1983)). If the language of a written

instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Id***. (citing ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. ***Id***. (citing ***McKee v. Continental Ins. Co.***, 234 S.W.2d 830 (Tenn. 1950)).

*Id*. at 252.

## IV. Analysis

### A. Paragraph 4(A)(d) of the MDA

As noted above, at the close of mediation, the parties signed off on a "Mediated Agreement," which includes the mediator's notations, to-wit:

> 7. Although disputed, and in my opinion not a viable element of recovery in this case, Mr. Lawrence will designate a $70,000.00 figure as dissipation in this case, one-half of which or $37,500.00. Mr. Lawrence will transfer to Mrs. Lawrence the 149,264.32 *[OK handwritten]* remainder of his 401(k) account. Counsel for Wife shall prepare the QDRO at Wife's expense. Additionally, Mr. Lawrence will pay $125,000.00 to Mrs. Lawrence for the loan and withdrawal he took out against the 401(k) to fund this *[298,588.64 handwritten]* litigation in the total amount of $250,000.00. Husband will also pay to Wife one-half (½) of the value of the gold and silver at National Security & Trust that existed at the time of mediation or $80,722.04. Mr. Lawrence will pay the sum of the dissipation figure, the 401(k) loan/withdrawal and the gold and silver at National Security & Trust or $243,222.04 to Mrs. Lawrence in monthly payments of $10,134.25 over a twenty-four (24) month period beginning thirty (30) days after the entry of the Final Decree of Divorce.

Paragraph 4(A)(d) of the parties' MDA was drafted based on the foregoing section of the "Mediated Agreement." This paragraph of the MDA states:

> As a division of marital property, Wife will also receive the sum of $298,588.64 representing one-half of a claimed dissipation by Husband, one-half of the value of the gold and silver at National Security and Trust that existed at the time of the mediation, and further representing loans Husband made and a withdrawal he took out of his 401(K). Such sum shall be paid over a twenty-four (24) month period in equal installments commencing on the first day of the first month following the entry of the Final Decree. Accordingly, Husband shall pay to Wife the sum of $14,441.19 each month for a period of 24 months . . . .

In its February 5, 2020 order, the trial court found that the parties agreed that the foregoing section of the MDA contained a drafting mistake:

- 4 -

Both parties admit that there was a mistake in drafting this provision. Wife contends that the mistake was that $298,588.64 represented the amount that Wife was to receive for the loans and withdrawals Husband made from his 401(k) and therefore, she was only to receive a total of $267,516.36. Regardless, again, both parties admit mistake. Husband, however, is not seeking reformation.

To resolve this alleged error, the trial court employed the doctrine of mutual mistake to reform paragraph 4(A)(d). The Tennessee Supreme Court recently addressed the equitable remedy of reformation on the ground of mutual mistake:

> Courts have jurisdiction under Tennessee law to reform written instruments to accurately reflect the parties' agreement. *Battle v. Claiborne*, 133 Tenn. 286, 180 S.W. 584, 587 (1915) (citation omitted); *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (citing *Greer v. J.T. Fargason Grocer Co.*, 168 Tenn. 242, 77 S.W.2d 443, 443–44 (1935); *Tenn. Valley Iron & R.R. Co. v. Patterson*, 158 Tenn. 429, 14 S.W.2d 726, 727 (1929)). Reformation is an equitable remedy "by which courts may correct a mistake in a writing 'so that it fully and accurately reflects the agreement of the parties.'" *Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. App. 2001) (quoting 22 Tenn. Jur. Rescission, Cancellation and Reformation § 46 (1999)).
>
> A court may reform an instrument to correct a mutual mistake. *Sikora*, 212 S.W.3d at 286 (citing *Alexander v. Shapard*, 146 Tenn. 90, 240 S.W. 287, 291-94 (1922); *Cromwell v. Winchester*, 39 Tenn. 389, 390-91 (1859)); *Lane*, 71 S.W.3d at 289 (citing *Williams v. Botts*, 3 S.W.3d 508, 509 (Tenn. Ct. App. 1999)). Mutual mistake "is a mistake common to all the parties to the written contract or the instrument or in other words it is a mistake of all the parties laboring under the same misconception." *Collier v. Walls*, 51 Tenn. App. 467, 369 S.W.2d 747, 760 (1962). A party seeking to reform a contract because of mutual mistake must show by clear and convincing evidence that:
>
>> (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation.
>
> *Sikora*, 212 S.W.3d at 287-88 (footnotes omitted) (citing 7 Corbin on Contracts § 28.45 at 283; 27 Williston on Contracts §§ 70:19 at 256, 70:23

at 264-65).

***Trent v. Mountain Commerce Bank***, 606 S.W.3d 258, 263 (Tenn. 2020).

In finding mutual mistake and reforming the parties' MDA, the trial court specifically held:

> The clear and unambiguous terms of the Marital Dissolution Agreement state that Husband will pay to Wife a sum representing one-half of the value of the gold and silver, one-half of the value of the dissipation, and the loans Husband made and a withdrawal he took out of his 401(k). While the term "one-half" modifies the gold and silver and the dissipation, it does not appear in the language identifying the loan and withdrawal from the 401(k). It is admitted that the total amount of the withdrawal and loans was $298,588.64. This is in fact the amount entered into the Marital Dissolution Agreement for total payment from all three categories, further demonstrating this mistake. Further, Wife was to receive the entirety of Husband's 401(k). It is logical that to effectuate her receipt of 100% of this asset that she would additionally receive 100% of the loans or withdrawal that he made from the account.

> ***

> The Court finds that, based upon clear and convincing evidence, the parties agreed that Wife was to receive one-half of the dissipation amount ($37,500), one-half of the value of gold and silver at National Security and Trust ($80,722.04), and the total amount of the loans or withdrawal from Husband's 401(k) ($298,588.64). Thus, the total amount Wife was to receive is $416,810.68. Per the agreement, this amount is to be paid in twenty-four monthly increments or at the rate of $17,367.11 per month. Accordingly, the Marital Dissolution Agreement shall be reformed as such and Wife is entitled to a judgment in the amount of $88,666.56 representing the deficiency in payments made from August 2018 through January 2020 ($4,925.92 for 18 months).

On appeal, Wife contends that the trial court's reformation of paragraph 4(A)(d) was correct. However, Husband disagrees. As set out in his appellate brief, Husband argues that:

> Admittedly, there is an immaterial math error in the first line [of the "Mediated Agreement"] where one-half of $70,000 is shown as $37,500 and not $35,000. This is a nonissue for either party as neither sought correction or alteration but rather accepted the $37,500. However, what is clear with all due respect to the trial court (what the Court improperly failed to consider in

- 6 -

the context of reformation), is that this paragraph reflects the parties' intended agreement and Former Husband intended to pay $125,000 or one-half of the total loan of $250,000. However, [the mediator] altered the numbers pursuant to the parties' agreement that Former Husband would pay $149,294.32, which is one-half of the total amount of the loan of $298,588.64. As the paragraph states, one-half of the dissipation is $37,500. The $298,588.64 figure being inserted by [the mediator] represented the then current total amount of the loan(s)/withdrawal(s) (not $250,000), and $149,294.32 representing one-half of that current amount (not $125,000). Third, Former Husband will pay $80,722.04 as one-half of the value of the gold and silver at National Security and Trust. What is clear is that whatever the total number is, Former Husband is agreeing to pay, and Former Wife is agreeing to accept, three items, in addition to the remainder of the 401(K), namely: (1) one-half dissipation - $37,500, (2) one-half of the loan(s)/withdrawal(s) from 401(K) - $149,294.32, and (3) one-half the value of the gold and silver at National Security and Trust - $80,722.04. These three items mathematically will equal a sum certain. That number is $267,516.36, certainly not $416,810.68 as the trial court ruling determined.

***

Admittedly, and frankly inexplicably, when the MDA got drafted and signed off on by the parties and their counsel, what was clearly intended to be the number $267,516.36 (representing one-half of the 401(K) loan(s)/withdrawal(s), dissipation and gold) was replaced in the MDA paragraph 4(A)(d) as the $298,588.64 sum certain to be paid Former Wife.

From their respective positions concerning the trial court's reformation of the MDA, it is clear that although the parties concede that a mistake was made in the drafting of the MDA, they do not agree on what that mistake was. In seeking affirmance of the trial court's reformation of paragraph 4(A)(d), we infer that Wife is of the opinion that the parties agreed that she would receive the full amount of Husband's withdrawal from the 401(k), i.e., $298,588.64. Husband, however, maintains that the parties agreed that Wife would receive only one-half of the withdrawn amounts, i.e., $149,294.32. In short, Wife ostensibly argues that there was no mistake in the MDA, and Husband contends that the MDA awarded Wife twice the agreed upon amount for his withdrawals from the 401(k). Stated another way, there is no mutual mistake in this case. As the Tennessee Supreme Court explained, a "mutual mistake" "is a mistake **common to all the parties** to the written contract or the instrument or in other words **it is a mistake of all the parties laboring under the same misconception**." *Trent*, 606 S.W.3d at 263 (citing *Collier*, 369 S.W.2d at 760) (emphases added). "Reformation is an equitable remedy 'by which courts may correct a mistake in a writing so that it fully and accurately reflects the agreement of the parties.'"

- 7 -

*Id*. (citation omitted). Here, the parties do not agree concerning whether Wife was to receive the full amount of Husband's 401(k) withdrawal, or whether she was to received one-half of that amount. In this regard, the parties are not "laboring under the **same** misconception." In the absence of a mutual mistake, the remedy of reformation is not available, and the trial court erred in reforming paragraph 4(A)(d) of the parties' MDA.

In the absence of mutual mistake, the trial court's ability to modify the MDA to comport with the "Mediated Agreement," or to otherwise look beyond the four corners of the MDA, is limited by the parole evidence rule. Parole evidence is only admissible to remove a latent ambiguity. ***Ward v. Berry & Assoc. Inc.***, 614 S.W.2d 372 (Tenn. Ct. App. 1981). However, if the language of a written instrument is unambiguous, the court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Pitt***, 90 S.W. 3d at 252 (citation omitted). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, ***Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Systems***, 884 S.W.2d 458, 462 (Tenn. 1994) (citing ***Oman Constr. Co. v. Tennessee Valley Authority***, 486 F. Supp. 375, 382 (M.D. Tenn. 1979)), nor can this Court create an ambiguity where none exists in the contract. ***Id.*** (citing ***Edwards v. Travelers Indem. Co.***, 300 S.W.2d 615, 617–18 (Tenn. 1957)).

As set out in context above, paragraph 4(A)(d) of the MDA contemplates that Wife will receive a sum certain of $298,588.64 payable in twenty-four monthly installments of $12,441.19. A sum certain is not ambiguous. Furthermore, the MDA clearly and unambiguously states that the $298,588.64 represents "one-half of a claimed dissipation by Husband, one-half of the value of the gold and silver at National Security and Trust that existed at the time of mediation, and further represent[s] loans Husband made and a withdrawal he took out of his 401(k)." There is no ambiguity as the MDA clearly states that the $298,588.64 represents the sum total of Wife's interest in the dissipation, the gold and silver, and the withdrawals from the 401(k). Although the parties may have contemplated some other arrangement or amounts in their "Mediated Agreement," the plain and unambiguous language used in the MDA governs the interpretation of their contract. If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. ***Pitt***, 90 S.W.3d at 252 (citing ***Petty***, 277 S.W.2d at 355). As such, under paragraph 4(A)(d), Wife is entitled only to a total of $298,588.64 (not $416,810.68), and Husband is to pay the $298,588.64 in twenty-four monthly payments of $12,441.19. Accordingly, we reverse the trial court's reformation of paragraph 4(A)(d) of the MDA.

### B. Paragraph 4(A)(e) of the MDA

Paragraph 4(A)(e) of the parties' MDA provides, in its entirety, as follows:

Wife shall receive one-half the value of the remaining gold in the total

- 8 -

approximate amount of $320,625 (Wife's one-half portion shall equal $128,250.00). The parties acknowledge that Husband shall cause the gold to be transferred from Switzerland to the United States as soon as possible, and, upon receipt of such gold, Husband will use these funds to borrow against the gold in order to pay to Wife the sum of $128,250.00. . . .

Citing the fact that $128,250.00 is not one-half of $320,625.00, Wife petitioned the trial court, pursuant to Rules 60.01 and 60.02 of the Tennessee Rules of Civil Procedure, to correct the alleged clerical mistake to award her $160,312.50 (one-half of $320,625.00). The trial court denied Wife's petition, finding, in relevant part:

> Like paragraph 4[(A)](d), Wife contends that this paragraph also contains a mistake that should be reformed. Contrary to Paragraph 4[(A)](d), there is not clear and convincing proof of a mistake meeting the required elements for reformation. Husband submits that the parties' agreed to a sum certain for Wife to receive. Unlike paragraph 4[(A)](d), this paragraph clearly reflects a sum certain without any other indications. Husband asserts that they agreed to a sum certain due to the requirements of him securing the gold from Switzerland and then obtaining the loan to fund his payment and the possibility of fluctuations in the price of the gold. Accordingly, Wife has not shown, by clear and convincing evidence, that reformation of this provision is appropriate. Wife's Petition as to paragraph 4[(A)](d) is denied.

Wife's argument that she is entitled to one-half of $320,625.00, i.e., $160,312.50 as opposed to the $128,250.00 stated in the MDA, ignores the modifying language "total approximate amount." By including this adjectival phrase to modify the $320,625.00, the parties clearly expressed their intent that the $320,625.00 is not a sum certain. Rather, the $320,625.00 is a mere approximation. The only sum certain in paragraph 4(A)(e) of the MDA is the $128,250.00 amount. As discussed above, a sum certain is not ambiguous. By giving full effect to all clauses and words in the parties' contract, the clear and unambiguous language shows the parties' intent that Wife's portion of this marital asset "shall equal $128,250.00," and that Husband will "pay to Wife the sum of $128,250.00." As such, the trial court did not err in denying Wife's petition to reform or otherwise modify the $128,250.00 amount.

### C. Paragraph 8 of the MDA

Paragraph 8 of the MDA provides, in relevant part:

BENEFITS FOR ADULT CHILDREN. Husband shall provide the following benefits for the parties' adult children.

\*\*\*

B. In the event the parties' children attend college immediately after high school . . . Husband agrees to pay one hundred percent of the tuition, books, sorority/fraternity fees, the cash equivalent of a dorm room and meal plan, and reasonable college fees for [the parties' children] . . . .

It is undisputed that the parties' eldest son attended college but lived with Wife for the Fall 2018 and Spring 2019 semesters. Wife petitioned the trial court alleging that Husband was in civil contempt of paragraph 8 of the MDA and requested specific performance and judgment against Husband based on his alleged failure to pay to Wife the "cash equivalent of dorm room and meal plan" for the Fall 2018 and Spring 2019 semesters, when the parties' son lived with Wife. The trial court denied Wife's petition. In its February 5, 2020 order, the trial court stated:

Wife contends that Husband is required to pay to her the cash equivalent of the cost of the dorm room and meal plan [for the parties' son] while he attended [college] and lived with her. The Court has reviewed the language of the Marital Dissolution Agreement. The provision regarding college expenses is clear when read in whole. Wife cannot separate out only one sentence to the exclusion of the remaining provision. Section 8 is clear and unambiguous that Husband is contractually obligating himself to pay for college expenses and college related expenses for the benefit of the adult children. These are obligations that, absent this agreement, Husband would not be obligated to pay. The provision repeatedly uses the term expenses. Black's Law Dictionary defines "Expenses" as "an expenditure of money, time, labor, or resources to accomplish a result." Further, it is clear from the terms of this provision that the beneficiaries of [Paragraph] 8 are the parties' adult children. It is not intended to provide further support for Wife. Therefore, the clear and unambiguous provisions within [Paragraph] 8 state that Husband is responsible for payment of college expenses incurred by the adult children.

While Wife asserts that she incurred additional expenses for the adult child to reside in her home, there is no proof that the adult child incurred living expenses equivalent to dorm room and meal plan. Consequently, Husband does not owe this amount to Wife and is therefore, not in contempt of Court. Moreover, even if expenses incurred by Wife were collectible under this provision, which the Court does not find they are, there is no proof as to the amount of any expenses incurred from which the Court could issue judgment.

Additionally, while the Court does not find this provision ambiguous and therefore, does not look outside the four corners of the Agreement, if the provision was ambiguous the Court could consider evidence outside the four corners of the Agreement. If the Court did so, the Court would credit

Husband's testimony that the terms "cash equivalent" referred to payment for a living expense such as an apartment that would replace the cost of a dorm room and meal plan. Again, the incurrence of such expense would be necessary.

The trial court's order is well reasoned. The plain and unambiguous language of paragraph 8 clearly indicates that Husband's agreement to pay college expenses inured to the benefit of the children and not to Wife, i.e., "Husband shall provide the following benefits **for the parties' adult children**." (Emphasis added). The MDA further states that "Husband agrees to pay one hundred percent of the tuition, books, sorority/fraternity fees, the cash equivalent of a dorm room and meal plan, and reasonable college fees for [the parties' children]." There is no language in the MDA to indicate that Husband is to pay or reimburse Wife for any of the enumerated expenses. Rather, he undertakes "to pay" directly the expenses incurred by the children during the course of their college careers. Furthermore, the MDA conditions Husband's obligation to pay these expenses "upon each child's executing all documents necessary for the Father to obtain all information on the child's grades, transcript, attendance, financial information. . . ." Nowhere in paragraph 8 is Wife mentioned, so we agree with the trial court's assessment that paragraph 8 "is not intended to provide further support for Wife." Given the fact that the parties' son is an adult, Wife could have refused to allow him to live in her home during his tenure at college. Under that scenario, Husband would have been obligated to pay the son's expenses to live in a dorm or an apartment. However, Wife's allowing her adult son to live with her was an act of largesse. As such, even though she may have incurred expenses for the son's necessaries during those two semesters, such amounts are not reimbursable to Wife under paragraph 8 of the MDA, and the trial court correctly held that Husband was not in contempt for failure to pay same.

## D. August 2018 Support

On March 2, 2018, the parties entered into a Consent Order on Temporary Support, under which Wife received payments totaling $30,000.00 per month during the pendency of the divorce. The $30,000.00 was paid as follows: $7,500.00 on the 11th of each month; two payments on the 15th of each month totaling $9,168.46 (i.e., one payment of $5,831.54 and another for $3,336.92); $7,500.00 on the 25th of each month; and $5,831.54 on the last day of each month.

The parties executed their MDA on July 17, 2018. Beginning on August 1, 2018, the parties' MDA and Permanent Parenting Plan provided that Husband would pay Wife the sum of $69,881.00 per month in alimony, child support, and property settlement. The parties' MDA further provides that:

By signing this Agreement, the parties stipulate to these terms being enforceable as if they were, at the moment of signing, an order of this Court;

- 11 -

and

*\*\**

(13) MISCELLANEOUS

(a) The parties hereby acknowledge that this Agreement contains an equitable settlement of any support issues and property rights between them

*\*\**

(c) Except as otherwise herein expressly provided, the parties shall and do hereby mutually [] release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both at law and in equity, which either of them ever had, now have or may hereafter have against the other party up to the date of this Agreement.

It is undisputed that, after the parties signed the MDA on July 17, 2018, Wife received, by direct deposit, $7,500.00 on July 25, 2018 and $7,536.58 on July 31, 2018. When Husband paid his August 2018 support obligation, he reduced the $69,881.19 by the $15,036.58 in total payments made on July 25 and July 31, 2018. In her brief to this Court, Wife argues that Husband was not entitled to this offset, to-wit:

In August of 2018, Husband paid to Wife only $54,844.61. Husband reduced the $69,881.19 owed for August 2018 by the $15,036.58 that Husband paid in July 2018 pursuant to the Consent Order on Temporary Support, but after the MDA was signed. Wife never contemplated that the MDA would absolve Husband of his obligation to pay the full $30,000 in temporary support for July 2018. Thus, Wife contended that Husband owed the $15,036.58 that he failed to pay in August 2018.

Husband has argued that the parties' MDA did not incorporate the Consent Order on Temporary Support. However, more importantly, the parties' MDA did not expressly extinguish Husband's obligation to pay $30,000 per month for the month of July 2018. Moreover, the MDA did not provide for any type of offset of the payments due by August 1, 2018 for any payments made by Husband prior to that date.

Plainly and simply, the Consent Order on Temporary Support required Husband to pay $30,000 per month through July 2018; and the MDA and PPP required Husband to begin paying $69,881.19 per month in August 2018. Husband made the July 2018 payments. He did not make all of his August 2018 payments.

The trial court disagreed with Wife's position. Relying on the foregoing section of the parties' MDA, the trial court held:

It is clear from the unambiguous language of the Marital Dissolution

- 12 -

Agreement that the parties intended the Marital Dissolution Agreement to govern their relations upon execution. It is further clear from the Marital Dissolution Agreement, that they waived any other obligations and/or claims that may have existed upon execution of the Marital Dissolution Agreement. To the extent that Wife had a claim for ongoing temporary alimony payments following the divorce, for the remainder of July 2018, Wife expressly waived those by entering into the Marital Dissolution Agreement. The Court does not find that Wife is entitled to the remainder of the payments following the entry of the Final Decree of Divorce. Accordingly, Husband is entitled to credit in the amount of $15,036.58 for the payments made in July following the entry of the Final Decree of Divorce ($7,500 on the 25th and $7,536.58 on the 31st).

Husband, however, has not paid the full amount due prior to the execution of the Marital Dissolution Agreement and entry of the Final Decree of Divorce. Prior to the execution of the Marital Dissolution Agreement, Husband paid $15,036.58 ($7,500.00 on the 11th and $7,536.58 on the 13th). He, however, owed $16,668.46 ($7,500 due on the 11th, [$9,168.46] due on the 15th . . .). Therefore, Husband had a deficiency of $1,631.88. Accordingly, he was only entitled to deduct $13,404.70. Accordingly, Husband owes to Wife the sum of $1,631.88 for August 2018 alimony payments. Wife is entitled to judgment against Husband in the amount of $1,631.88. The Court declines to hold Husband in contempt for this amount as this was a mathematical error that even the parties and counsel did not appear to catch.

Based on Husband's alleged failure to pay Wife the full amount of August 2018 support, the trial court held that it was required, under the plain language of the MDA (*see infra*), to award Wife her attorney's fees. The trial court reserved the issue of the amount of attorney's fees pending hearing. Before the hearing on attorney fees occurred, Husband filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the trial court's February 5, 2020 order. By order of June 23, 2020, the trial court granted Husband's motion in part. As is relevant here, the trial court held:

As set forth in the February 5, 2020 Order, in the Marital Dissolution Agreement, the parties released any and all claims that either had against the other. At the time of signing the Marital Dissolution Agreement, Wife had a claim for the shortfall in the temporary support as found in the February 5, 2020 Order. As such, by executing the Marital Dissolution Agreement, Wife released and discharged that claim. Therefore, the Court modifies the February 5, 2020 Order to find that Wife is not entitled to any further amounts for the temporary support and such claims should be dismissed. As such, the Court also modifies its award of attorney's fees to Wife on this issue.

- 13 -

The trial court did not err in allowing Husband to offset the support amounts paid **after** the parties entered the MDA on July 17, 2018. As set out in context above, under the plain language of the MDA, the parties agreed to "release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations . . . which either of them **ever had, now have** or may hereafter have against the other party up to the date of this Agreement." (Emphasis added). The Temporary Consent Order on Support obligated Husband to pay monthly support, but, under the foregoing clause of the MDA, Wife agreed to release Husband of that obligation as of the July 17, 2018 date of the MDA. Therefore, under the plain language of the MDA, and as correctly found by the trial court in its June 23, 2020 order, Wife waived any payments made by Husband after July 17, 2018. It is undisputed that Husband paid Wife $7,500.00 on July 25, 2018 and an additional $7,536.58 on July 31, 2018, for a total of $15,036.58. For the foregoing reasons, Wife was not entitled to these payments. As such, Husband was not in contempt of any order when he reduced his August 2018 payment by the $15,036.58 he overpaid in July 2018.

### E. Attorney's Fees

Paragraph 13(g) of the parties' MDA provides:

> Should either party fail to abide by or perform the agreements herein, he or she shall be liable to the other party for all reasonable attorney fees, costs and expenses incurred by the other in securing performance.

In ***Eberbach v. Eberbach***, 535 S.W.3d 467, 478 (Tenn. 2017), the Tennessee Supreme Court has explained the effect of a contractual attorney fee provision as follows:

> Our courts long have observed at the trial court level that parties are contractually entitled to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees. In such cases, the trial court does not have the discretion to set aside the parties' agreement and supplant it with its own judgment. The sole discretionary judgment that the trial court may make is to determine the amount of attorney's fees that is reasonable within the circumstances. The same is and must be true of our appellate courts.

(Citations omitted). Statutory authority likewise provides for the payment of attorney fees related to enforcement of alimony. Tennessee Code Annotated section 36-5-103(c) provides that:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter,

- 14 -

change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Wife relies on the paragraph 13(g) of the MDA and Tennessee Code Annotated section 35-5-103(c) in arguing that she is entitled to both trial and appellate attorney's fees.

Starting with the language of the MDA, in order for Husband to be liable for Wife's attorney's fees under paragraph 13(g), *supra*, he would have to "fail to abide by or perform the agreements [contained in the MDA]." Based on the foregoing discussion, Husband did not fail to abide by the MDA. We have affirmed the trial court's holding that Husband was not in contempt for either failing to reimburse Wife for their son's college expenses, or for failure to pay the full measure of his August 2018 support obligation. There is no evidence that Husband failed to abide by any provision of the MDA. As such, paragraph 13(g) of the MDA is not triggered.

Concerning whether Wife is entitled to recoupment of her trial and appellate attorney's fees under Tennessee Code Annotated section 35-5-103(c), in order to trigger the statute Wife would have to be the "prevailing party." She is not. We have reversed the trial court's reformation of paragraph 4(A)(d) of the MDA, which is a ruling in favor of Husband. Furthermore, we have affirmed the trial court's holdings concerning the denial of reimbursement for the son's college expenses and Husband's alleged shortfall in the August 2018 support payments. Finally, we have declined to reverse or modify the trial court's decision to deny reformation of paragraph 4(A)(e) of the MDA. As such, Wife is not entitled to recover her attorney's fees under the statute.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's reformation of paragraph 4(A)(d) of the parties' MDA. The trial court's orders are otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, Cynthia Lawrence, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
